**In re Bridget POWELL and Godson L. Powell, Debtors.**

**Bankruptcy No. 98–01885–TOM–13.**

United States Bankruptcy Court,
N.D. Alabama,
Southern Division.

July 10, 1998.

Rita D. Hood, Bessemer, AL, for Debtors.

Mark P. Williams, Birmingham, AL, for Movant.

### MEMORANDUM OPINION AND ORDER

TAMARA O. MITCHELL, Chief Judge.

This case is before the Court following a final hearing on the Motion for Relief from Stay and Objection to Confirmation filed by Ford Motor Credit Company (hereafter "Movant"). Appearing at the June 11, 1998 hearing were Rita D. Hood, attorney for the Debtors, and Mark P. Williams, attorney for Movant. This Court has jurisdiction pursuant to 28 U.S.C. § 1334(b) (1994) and the General Order Of Reference Dated July 16, 1984, As Amended July 17, 1984. These are core proceedings arising under Title 11 of the United States Code. 28 U.S.C. § 157(b)(2)(G) and (L) (1994); *Wood v. Wood (In re Wood),* 825 F.2d 90, 96–97 (5th Cir. 1987). The Court has taken judicial notice of

the contents of the court files in the Debtors' prior Chapter 7 case and in this pending Chapter 13 case pursuant to Federal Rule of Bankruptcy Procedure 9017 and Federal Rule of Evidence 201.[1] Additionally, the Court has considered the pleadings and testimony. In accordance with Federal Rule of Civil Procedure 52, applicable to contested matters in bankruptcy pursuant to Federal Rules of Bankruptcy Procedure 9014 and 7052,[2] this Court makes the following findings of fact and conclusions of law:

## I. FINDINGS OF FACT

The Debtors filed their first Chapter 13 petition and a composition plan[3] with this Court on October 7, 1997, Case No. 97–07573–TOM–13. After a Notice of Deficient and/or Incomplete Filing was mailed to Debtors' counsel, Debtors filed their schedules, Statement of Financial Affairs, and Disclosure of Compensation of Attorney for Debtor on October 22, 1997. Debtors listed a 1993 Crown Victoria (hereafter "car"), a 1993 Ford Aerostar (hereafter "van"), and a 1989 Ford Ranger (hereafter "truck") in Schedule C—Property Claimed as Exempt, and listed Movant in Schedule D—Creditors Holding

Secured Claims with respect to a $13,300.00 claim on the car and a $5,600.00 claim on the van. On December 9, 1997, this Court entered an Order of Conversion granting the Debtors' oral motion to convert to a case under Chapter 7. On February 10, 1998, the Chapter 7 trustee filed his Final Report of Trustee in No Asset Case. On March 2, 1998, this Court's Order Granting Ford Motor Credit Company Relief from Stay reflecting Debtors' consent to Movant's Motion for Relief from Stay with respect to the car was entered. On May 22, 1998, the Court entered an order of Discharge of Joint Debtors in the Debtors' Chapter 7 case. On June 2, 1998, this Court entered an Order Closing Estate and Discharging Trustee in No Asset Case.

Prior to the entry of discharge in the above Chapter 7 case, Debtors filed their present Chapter 13 petition on March 19, 1998. They filed their schedules on April 3, 1998. Debtors again listed the car, van and truck in Schedule C—Property Claimed as Exempt, and listed Movant in Schedule D—Creditors Holding Secured Claims with respect to a $14,500.00 claim on the car and a

1. **Fed.R.Bankr.P. 9017, Evidence** provides the following:
   The Federal Rules of Evidence and Rules 43, 44 and 44.1 F.R.Civ.P. apply in cases under the Code.
   **Fed.R.Evid. 201, Judicial Notice of Adjudicative Facts** provides the following:
   (a) *Scope of Rule.* This rule governs only judicial notice of adjudicative facts.
   (b) *Kinds of Facts:* A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
   (c) *When Discretionary.* A court may take judicial notice, whether requested or not.
   (d) *When Mandatory.* A court shall take judicial notice if requested by a party and supplied with the necessary information.
   (e) *Opportunity to Be Heard.* A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the manner noticed. In the absence of prior notification, the request may be made after judicial notice has been taken.
   (f) *Time of Taking Notice.* Judicial notice may be taken at any stage of the proceeding.
   (g) *Instructing Jury.* In a civil action or proceeding, the court shall instruct the jury to ac-

cept as conclusive any fact judicially noticed. In a criminal case, the court shall instruct the jury that it may, but is not required to, accept as conclusive any fact judicially noticed.

2. **Fed.R.Bankr.P. 9014, Contested Matters** provides:

   In a contested matter in a case under the Code not otherwise governed by these rules, relief shall be requested by motion ... the following rules shall apply: ... Rule 7052 ...
   **Fed.R.Bankr.P. 7052, Findings by the Court** provides:
   Rule 52 F.R.Civ.P. applies in adversary proceedings.
   **Fed.R.Civ.P. 52 Findings by the Court; Judgment on Partial Findings** provides:
   (a) In all actions tried upon the facts without a jury ... the court shall find facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58 ...

3. A composition plan is a Chapter 13 plan providing for payment to unsecured creditors of less than 100% of their allowed claims. 5 *Norton Bankr.L. & Prac.2d* § 113:1. A composition plan is also defined as a "composition with creditors." See *Black's Law Dictionary* 286 (6th ed.1990).

$5,600.00 claim on the van. Also in Schedule D, the Debtors estimated the fair market value of the car to be $13,300.00 and that of the van to be $5,600.00. On June 4, 1998, Movant filed proofs of claim for principal balances only in the amount of $19,026.45 on the car debt and $6,916.50 on the van debt.

On May 12, 1998, Movant filed an Objection to Confirmation, alleging that Debtors' proposed Chapter 13 plan fails to provide Movant with adequate protection of its security interest in the car and van. On May 14, 1998, Movant filed a Motion for Relief from Stay on grounds that Debtors were in default as of July 1, 1997 on their notes with respect to the car and van and have no equity in these vehicles, and that the vehicles are depreciating in value and are being subjected to possible damage and loss. Attached to Movant's motion were copies of the retail installment sales contracts (hereafter "contract(s)") regarding the car and van and the respective certificates of title for these vehicles reflecting Movant as the lienholder. The copy of the contract for the van reflected that it was executed by Debtor Bridget B. Powell in her capacity as Reverend for Christ Reconciliation Gospel Ministries on September 21, 1996. The copy of the contract for the car showed that it was executed by Debtor Bridget B. Powell but did not reflect a date of execution, although the contract did reflect that monthly installment payments were to commence on April 26, 1997. Movant alleged in its motion that the car contract was signed on March 27, 1997.[4]

At the hearing on Movant's pleadings, counsel for Movant requested that, as additional grounds for granting its motion and objection, the Court take judicial notice of: (1) the contents of the Debtors' previous Chapter 7 file, including the absence of a statement of intention and reaffirmation agreements on the car and van debts required to be filed pursuant to 11 U.S.C. § 521(2)(A) (1994);[5] (2) the Chapter 13 Standing Trustee's Interim Statement as of June 11, 1998 showing the Debtor behind by one plan payment of $1,450.00; and (3) the Debtors' Chapter 13 plan summary filed on April 3, 1998 which proposed paying Movant's claims in slightly more than sixty months. The Debtors' counsel did not object to this request.

The only witness at the hearing was Debtor Godson L. Powell (hereafter "Debtor"). Debtor testified that he and his wife had never filed a bankruptcy petition before October 7, 1997, and that this Chapter 13 case was filed after the case filed on October 7, 1997 was converted to a case under Chapter 7.[6] Debtor testified that both the car and van were bought used from Jim Skinner Ford and that Movant financed both purchases. He stated that the van was purchased in 1996 and the car was leased in 1996

---

**4.** The copy of the certificate of title to the car reflected March 27, 1997 as the effective date of Movant's lien.

**5.** **11 U.S.C. § 521(2)** provides:
The debtor shall—
(2) if an individual debtor's schedule of assets and liabilities includes consumer debts which are secured by property of the estate—
(A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property;
(B) within forty-five days after the filing of the notice of intent under this section, or within

such additional time as the court, for cause, within such forty-five day period fixes, the debtor shall perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph; and
(C) nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title;

**6.** Although the Debtor testified on direct examination by his counsel that he had never filed bankruptcy prior to this pending Chapter 13 case, on cross-examination by Movant's counsel he stated that he thought the present Chapter 13 case was part of his first Chapter 13 case. He then corrected his previous testimony by stating that he and his wife were debtors in a prior Chapter 13 case that was converted to a Chapter 7. On re-direct, he testified that he had never filed bankruptcy prior to the Chapter 13 case filed with this Court in October of 1997.

and purchased in 1997.[7] Debtor said his wife traded a 1991 Oldsmobile Cutlass Sierra already paid for when she purchased the van in 1996 which the seller accepted as a $5,000.00 downpayment toward the purchase price of the van.[8] Debtor also testified that his wife traded a 1990 or 1991 Ford Tempo plus either $800.00 or $1,000.00 toward the lease or subsequent purchase of the car.[9]

Debtor stated that at the time his wife purchased the van and leased the car, the income she listed on the credit applications was his $10,000.00 monthly income as a minister for Christ Reconciliation Gospel Ministries, an organization with home operations based in Nigeria. He said that after September 1996, this organization terminated operations. As a result, he said that he and his wife formed Trinity Gospel Church, where presently he is a minister and his wife is a counselor. He stated that they currently earn between $3,500.00 and $4,000.00 per month from their work for Trinity Gospel Church and that he also earns between $1,000.00 and $1,500.00 per month from odd jobs such as lawn maintenance and plumbing work.[10]

Debtor said that he thought that filing a petition with the bankruptcy court would automatically reaffirm his debts with Movant, and that reaffirmation was their intention. He testified that after conversion of their first case to a Chapter 7, Movant was amenable to a reaffirmation of both debts, conditioned upon the Debtors immediately curing all arrearage and providing proof of insurance coverage on both the car and van. Debtor said they were unable to pay the entire arrearage on both debts at that time, but that both vehicles were covered by a Southern United Fire Insurance policy the Debtors purchased through an insurance agency, Sharp & Associates. Debtor stated that he and his wife had already told their attorney that they wanted to increase their proposed plan payments to the trustee in order to increase their fixed monthly payments to Movant to pay both debts owed to Movant within 60 months.[11] Debtor testified that he and his wife would make their second plan payment to the trustee by the twenty-fifth day of this month.[12]

Debtor also stated that the car is their primary source of personal transportation because it is large enough to accommodate his wife and the wheelchair to which she has been confined since suffering a medical condition which was similar to a stroke. Debtor said that the van is used primarily to transport children who attend daycare at the church's babysitting service and to transport elderly people attending church. He stated that the truck listed in his schedules is used for transporting equipment that he uses in maintaining lawns. He further said that

7. Debtor testified on direct examination that he thought his wife purchased the van in 1995 and purchased the car in 1996. On cross-examination, after Movant's counsel showed Debtor a copy of the contracts Debtor agreed that his wife must have purchased the van in 1996, leased the car in 1996, and then purchased the car in 1997.

8. The contract for the van reflected a "cash price" of $10,372.50 for the van, and that Debtors traded a 1991 Oldsmobile as a $5,000.00 downpayment toward the $13,586.00 "sale price" of the van. The "sale price" included annual interest of 19.25% over 36 months.

9. Debtor stated that his wife had leased the car for one year prior to purchasing it. Debtor initially testified that he thought his wife traded the Ford Tempo plus $800.00 or $1,000.00 at the time she purchased the car. However, when questioned by Movant's counsel concerning the absence of any downpayment on the car contract, Debtor stated that it was possible that the Tempo and cash constituted a downpayment for the lease rather than the subsequent purchase of the car. The contract for the car reflected a "cash price" of $14,131.79 and a "sale price" of $20,294.88 which included annual interest of 15.25% over 48 months.

10. The Debtors' Schedules I and J filed in the present case on April 3, 1998 reflect a combined monthly income of $3,500.00, monthly expenses of $1,715.00, $1,785.00 in excess income available for contribution to their Chapter 13 plan payments, and proposed monthly plan payments of $1,450.00.

11. The Debtors' amended plan summary filed on June 10, 1998 reflects an increase in monthly plan payments to $1,530.00 with a combined increase of $112.00 in fixed monthly payments on the two debts owed to Movant.

12. As of June 18, 1998, the Interim Statement reflected that the trustee received a second payment of $1,470.00 on June 17, 1998, well before June 25, 1998.

both vehicles were presently in good condition.

## II. CONCLUSIONS OF LAW

### A. Whether the Debtors' Failure to Comply With § 521(2) Justifies Granting Movant's Motion for Relief or Objection to Confirmation

The Court will first address Movant's oral argument that the Debtors' failure to file a Statement of Intention reaffirming their debts as well as their failure to execute reaffirmation agreements with Movant in the prior Chapter 7 case, as required under § 521(2), constitute a basis for granting Movant's motion for relief and/or objection to confirmation in the Debtors' present Chapter 13 case. To reach the appropriate conclusion, the Court initially must determine whether and to what extent the debtor's noncompliance with respect to § 521(2) is actionable in a pending Chapter 7.

### (1) In a Pending Chapter 7 Case

In a pending Chapter 7 case, the debtor who intends to retain exempt property that secures a debt must comply with the requirements of § 521(2) by either reaffirming on the debt or redeeming the property from the creditor. In *Taylor v. AGE Federal Credit Union (In re Taylor)*, 3 F.3d 1512 (11th Cir.1993), the Eleventh Circuit held that the plain language of § 521(2) requires a debtor in a case pending under Chapter 7 who wants to retain the property securing a consumer debt to either reaffirm on the debt pursuant to § 524(c) or redeem the property pursuant to § 722. The court reasoned that even though the debtors were current on their payments to the secured creditor, "[a]llowing a debtor to retain property without reaffirming or redeeming gives the debtor not a 'fresh start' but a 'head start' since the debtor effectively converts his secured obligation from recourse to nonrecourse with no

downside risk for failing to maintain or insure the lender's collateral." *Id.* at 1516.

This Court can identify four possible remedies a secured creditor may pursue in a pending Chapter 7 where the debtor fails to perform his duties in accordance with § 521(2). First, the creditor may file a motion requesting a court order to compel the debtor to file a statement of intention as required by § 521(2)(A). *See Johnson v. Sun Finance Co. (In re Johnson)*, 89 F.3d 249 (5th Cir.1996); *Government Employees Credit Union v. Castillo (In re Castillo)*, 213 B.R. 316 (W.D.Tex.1997); *In re Kennedy*, 137 B.R. 302 (Bankr.E.D.Ark.1992). Second, the creditor may file a motion to compel the debtor to perform in accordance with his statement of intention as required under § 521(2)(B).[13] *See In re Taylor*, 3 F.3d 1512 (11th Cir.1993); *Home Owners Funding Corp. v. Belanger (In re Belanger)*, 962 F.2d 345 (4th Cir.1992); *In re Edwards*, 901 F.2d 1383 (7th Cir.1990); *In re Greer*, 189 B.R. 219 (Bankr.S.D.Fla.1995). Third, the creditor may file an adversary proceeding pursuant to § 542 to compel the debtor to turn over the property for failure to perform his duty under § 521(2)(A) and/or (B). Fourth, the creditor may file a motion for relief from stay under the "for cause" provision of § 362(d)(1) with respect to the collateral on grounds that the debtor failed to perform in accordance with § 521(2)(A) and/or (B). *See Capital Communications Fed. Credit Union v. Boodrow (In re Boodrow)*, 126 F.3d 43 (2d Cir.1997).

In the Debtors' prior Chapter 7 case, Movant filed a motion for relief from stay—but only with respect to the car—on the basis that Debtors were in default, had no equity in the car, and were subjecting the car to possible damage and/or loss. That motion was granted by agreement of the parties. Movant never filed a motion or complaint in the Debtors' prior Chapter 7 case seeking relief on the basis that Debtors failed to perform pursuant to § 521(2)(A) and/or (B).

---

13. In *In re French*, 185 B.R. 910, 914 (Bankr. M.D.Fla.1995), the court held that "if a debtor is willing to reaffirm the terms of the original [credit] agreement, has attempted in good faith to negotiate a reaffirmation agreement with the creditor, and has taken all acts otherwise necessary to reaffirm a debt under Section 524 of the Code, then this Court would deem that the debtor has complied with the requirements of Section 521 as required by the Eleventh Circuit Court of Appeals in *Taylor*."

Notably, a motion for relief from stay based on the debtor's failure to comply with § 521(2) is quite different from a motion for relief based on the debtor's prepetition default of the security agreement. *See In re Edwards*, 901 F.2d 1383, 1386 (7th Cir.1990).

### (2) In the "Chapter 20" Scenario

Movant filed a motion for relief and objection to confirmation in the Debtors' pending Chapter 13 case. Furthermore, not until after the Debtors' received their Chapter 7 discharge did Movant argue that the Debtors' failure to comply with § 521(2)(A) and (B) in the prior Chapter 7 was grounds for its motion and objection in the Chapter 13. The facts and Movant's procedural posture in the present case are nearly identical to those in the case of *Jim Walter Homes, Inc. v. Saylors (In re Saylors)*, 869 F.2d 1434, 1438 (11th Cir.1989). In *Saylors*, the bankruptcy court granted the creditor-mortgagee's motion for relief from stay in the debtors' Chapter 7 case. After the debtors received their Chapter 7 discharge, they filed a Chapter 13 plan proposing to repay the arrearage owed to the creditor-mortgagee. The creditor-mortgagee filed an objection to confirmation of the debtors' subsequent Chapter 13 plan. The Eleventh Circuit held that the debtors' receipt of a discharge from personal liability on the mortgage debt in their prior Chapter 7 case was not grounds to deny confirmation of the debtors' Chapter 13 plan to cure the mortgage arrearage.

The *Saylors* court reasoned that after a discharge from personal liability on the mortgage debt, the debtors still retained an equitable interest in their home and their statutory right of redemption, which were § 541(a)(1) property of the debtors' Chapter 13 estate over which the bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. Further, the clear language of §§ 102(2) and (4) and 1322(b)(5), as well as the legislative history of § 102(2) reveal that Congress intended a claim against the estate to include nonrecourse debts. Therefore, the nonrecourse mortgage debt and arrearage which survived the Chapter 7 discharge was subject to inclusion in the debtors' subsequent Chapter 13 plan. Most importantly,

the Eleventh Circuit recognized that property of the estate and the automatic stay with respect to that property in the Chapter 7 case had no effect on inclusion of the property, the secured debt arrearage, or the automatic stay in the debtors' subsequent Chapter 13 case. The court explained that:

> The bankruptcy court's order of December 29 merely lifted the automatic stay in the chapter 7 case. In no way did the order purport to be a permanent adjudication of Jim Walter's right to foreclose. The order also cannot be construed as lifting the stay in the chapter 13 case ... The property of Saylors' chapter 13 estate is distinct from the property of the chapter 7 estate that preceded it. Compare 11 U.S.C. § 1306 (property of the chapter 13 estate) with 11 U.S.C. § 541 (property of the bankruptcy estate). Consequently, each stay also is distinct. See e.g., 11 U.S.C. § 362(a)(2)–(5) (automatic stay protections on property of the estate).

*Id.* at 1438. The United States Supreme Court's decision in *Johnson v. Home State Bank*, 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991) upheld the Eleventh Circuit's analysis and decision in *Saylors* under a case involving facts and circumstances identical to those in *Saylors*.

■ Accordingly, the Eleventh Circuit's analysis in *Saylors* is controlling in the present case. Property of the Debtors' prior Chapter 7 estate and the automatic stay in effect on that property are autonomous with respect to the property and stay in their pending Chapter 13 case. Therefore, any basis for granting relief from the stay with respect to the car and van in the Debtors' Chapter 7 case, as well as the lifting of that stay, has no effect in the Chapter 13 case. While the Court recognizes that the Debtors' failure to comply with § 521(2) regarding the car and van in the prior Chapter 7 case may have been grounds for granting a motion for relief from the Chapter 7 stay on those vehicles, the Court finds that such noncompliance is not, in and of itself, grounds for granting a motion for relief in the pending Chapter 13 case. Furthermore, confirmation of a pending Chapter 13 plan is not dependent upon property interests, the automatic stay, or

relief from stay proceedings in a prior Chapter 7 case. *See* 11 U.S.C. § 1325(a) (1994).[14] Accordingly, based on the reasoning of the *Saylors* and *Johnson* decisions, as well as the plain language of § 1325, this Court concludes that the Debtors' failure to comply with § 521(2)(A) and (B) in their prior Chapter 7 case does not constitute a basis for granting Movant's motion for relief and/or objection to confirmation in the Debtors' present Chapter 13 case.

### B. Movant's Motion for Relief from Stay

A party with an interest in property of the bankruptcy estate may obtain relief from the § 362(a) automatic stay under the provisions of 11 U.S.C. § 362(d) (1994).[15] Under subsection § 362(d)(1), the court shall grant relief from the stay upon a showing of "cause" including the lack of adequate protection of an interest in property. Under subsection § 362(d)(2), the court shall grant relief from the stay of an act against property of the debtor or of the estate if the debtor has no equity in the property and the property is not necessary to an effective reorganization. The movant must carry the initial burden of establishing a prima facie case for relief under § 362(d)(1) and/or (2) before the burden of proof shifts to the debtor. *See Sonnax Industries, Inc. v. Tri Component Products Corp. (In re Sonnax Industries, Inc.)*, 907 F.2d 1280 (2nd Cir.1990); *In re Marvin Johnson's Auto Service, Inc.*, 192 B.R. 1008 (Bankr.N.D.Ala.1996); *In re Elmira Litho, Inc.*, 174 B.R. 892 (Bankr.S.D.N.Y. 1994). *See also* 3 W. Collier, *Collier on Bankruptcy* ¶ 362.10 (15th ed. rev.1997). Once the movant establishes sufficient evidence of its prima facie case for relief, the debtor has the burden of proof on all issues other than his equity in the collateral under § 362(d)(2).[16]

Obviously, the movant seeks relief from the stay with respect to property of the debtors' estate in which the movant also has an interest. Property of the estate is broadly defined in 11 U.S.C. § 541(a)(1) (1994) as

**14. 11 U.S.C. § 1325(a) provides:**

Except as provided in subsection (b), the court shall confirm a plan if—
(1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;
(2) any fee, charge, or amount required under chapter 123 of title 28 [28 U.S.C. §§ 1911 et seq.] or by the plan, to be paid before confirmation, has been paid;
(3) the plan has been proposed in good faith and not by any means forbidden by law;
(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;
(5) with respect to each allowed secured claim provided for by the plan—
(A) the holder of such claim has accepted the plan;
(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
(C) the debtor surrenders the property securing such claim to such holder; and
(6) the debtor will be able to make all payments under the plan and to comply with the plan.

Note: Subsection (b) of § 1325 concerns objections to confirmation of the plan by *the trustee or holder of an allowed unsecured claim* (emphasis added) and is therefore inapplicable. Subsection (c) is likewise inapplicable here.

**15. 11 U.S.C. § 362(d)(1) and (2) provide:**

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
(1) for cause, including lack of adequate protection of an interest in property of such party in interest;
(2) with respect to a stay of an act against property under subsection (a) of this section, if—
(A) the debtor does not have art equity in such property; and
(B) such property is not necessary to an effective reorganization;
Note: Subsection (3) is not applicable here because it concerns relief from stay with respect to single asset real estate cases.

**16. 11 U.S.C. § 362(g) provides:**

In any hearing under subsection (d) or (e) of this section concerning relief from stay of any act under subsection (a) of this section—
(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in the property; and
(2) the party opposing such relief has the burden of proof on all other issues.

"all legal or equitable interests of the debtor in property as of the commencement of the case." State law determines the debtor's legal or equitable interests in property at the time of filing his bankruptcy petition. *Commercial Federal Mortgage Corp. v. Smith (In re Smith)*, 85 F.3d 1555 (11th Cir.1996).

In the present case, when the Debtors filed their Chapter 13 petition, they were in default on their car and van debts with Movant.[17] However, they were in possession of both the car and van. This Court recognized in *Hyde v. Hendrix (In re Hyde)*, Case No. 95–05766–TOM–13 (November 1997) that the debtor's possessory interest in a leased portable building was "property from the estate" as defined in 11 U.S.C. § 362(a)[18] to which the automatic stay on creditor actions applied. Likewise, the Court holds that the Debtors' possessory interest in the car and van at the commencement of their Chapter 13 case is sufficient for their inclusion as property of the estate to which the Chapter 13 automatic stay applies.

17. Because they were in default, Debtors probably retained a statutory right of redemption pursuant to Ala.Code § 7–9–506. That section provides:

At any time before the secured party has disposed of collateral or entered into a contract for its disposition under Section 7–9–504 or before the obligation has been discharged under subsection (2) of Section 7–9–505 the debtor or any other secured party may unless otherwise agreed in writing after default redeem the collateral by tendering fulfillment of all obligations secured by the collateral as well as the expenses reasonably incurred by the secured party in retaking, holding and preparing the collateral for disposition, in arranging for the sale, and to the extent provided in the agreement and not prohibited by law, his reasonable attorney's fees and legal expenses.

18. 11 U.S.C. § 362(a) provides:

Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

Movant can pursue a motion for relief from stay with respect to the car and van in Debtors' pending Chapter 13 case as provided by § 362(d)(1) or (2), notwithstanding that the vehicles are subject to nonrecourse debts.[19] *See In re Fuller*, 111 B.R. 660 (Bankr.S.D.Ohio 1989); *In re MGN Co., III*, 116 B.R. 654 (Bankr.S.D.Ind.1989). In its motion for relief from stay, Movant alleged that the vehicles are being subjected to depreciation, damage and loss—e.g., that there has been no adequate protection of its interest in the car and van pursuant to § 362(d)(1)—and that Debtors have no equity in these vehicles pursuant to § 362(d)(2). Each of these concerns will be addressed next.

### (1) Lack of Adequate Protection Pursuant to § 362(d)(1)

According to 11 U.S.C. §§ 1306(b) (1994),[20] the Chapter 13 debtor retains possession of property of the estate. The debtor

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate *or of property from the estate* or to exercise control over property of the estate (emphasis added);

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor.

19. The car and van debts were nonrecourse at the time of this hearing because before this hearing the Debtors had received a discharge from personal liability on the car and van debts in their prior Chapter 7 case.

20. 11 U.S.C. § 1306(b) provides:

Except as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate.

in Chapter 13 also retains the rights of a trustee under 11 U.S.C. §§ 1303 (1994)[21] to use, sell or lease this property as provided in 11 U.S.C. §§ 363(b) (1994),[22] subject to the requirement of 11 U.S.C. § 363(e) (1994)[23] that the secured creditor be provided with adequate protection of its interest in the collateral. Adequate protection as defined in 11 U.S.C. § 361(1) (1994)[24] includes requiring the trustee to make periodic cash payments to a secured creditor to the extent that the automatic stay on that creditor's acts results in depreciation of the value of its interest in the collateral.

Because of the plain language of 11 U.S.C. §§ 1306, 1303, 363(b) and (e), the Chapter 13 debtor steps into the shoes of the trustee with respect to providing adequate protection as required by § 361 to the secured creditor where the creditor files a motion for relief from stay for lack of adequate protection. *See In re Cook*, 205 B.R. 437 (Bankr.N.D.Fla. 1997); 1 Keith M. Lundin, *Chapter 13 Bankruptcy* § 3.39 (2d. ed., 1997–98 Supp.). Since periodic cash payments by the trustee to the secured creditor is one means of ensuring adequate protection of that creditor's interest in the collateral, it follows that the debtor in Chapter 13 can make these periodic cash payments to provide the secured creditor with adequate protection. *Id.; American Honda Finance Corp. v. Littleton*, 220 B.R. 710 (Bankr.M.D.Ga.1998). The debtor can make these cash payments to the trustee as part of his payments required under the Chapter 13 plan. *American Honda Finance*

*Corp. v. Littleton*, 220 B.R. 710 (Bankr. M.D.Ga.1998). Further, the debtor can make payments to the trustee for as long as sixty months under his plan, subject to approval by the bankruptcy court.[25] Additionally, adequate protection may include providing proof of an enforceable insurance policy on the collateral and/or proof of proper maintenance of the property. *See American Honda Finance Corp. v. Littleton*, 220 B.R. 710 (Bankr.M.D.Ga.1998); *Carteret Sav. Bank v. Nastasi–White, Inc. (In re East–West Assocs.)*, 106 B.R. 767, 773 (S.D.N.Y. 1989); *In re MGN Co., III*, 116 B.R. 654 (Bankr.S.D.Ind.1989). *See also* 3 W. Collier, *Collier on Bankruptcy* ¶ 362.07[3][f] (15th ed. rev.1997).

In the present case, Movant presented evidence that at the time of the hearing, Debtors were behind one month in their Chapter 13 plan payments to the trustee's office and that the fixed monthly payments to Movant proposed in the initial plan summary would not repay the car and van debts within sixty months. However, the Chapter 13 trustee's Interim Statement of June 18, 1998 reflects that Debtors are making their monthly plan payments. In addition, the Debtors' amended plan summary provides Movant with fixed monthly payments sufficient to repay the car and van debts within sixty months. Further, Debtor testified that these vehicles are presently in good condition and are covered by an enforceable insurance policy. The Court holds that Movant's interest in the car and van are being adequately protected.

**21. 11 U.S.C. § 1303** provides:

Subject to any limitations on a trustee under this chapter, the debtor shall have, exclusive of the trustee, the rights and powers of a trustee under section 363(b) . . . 363(e). . .

**22. 11 U.S.C. § 363(b)(1)** provides:

The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.

**23. 11 U.S.C. § 363(e)** provides:

Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

**24. 11 U.S.C. § 361(1)** provides:

When adequate protection is required under section 362 . . . of this title of an interest of an entity in property, such adequate protection may be provided by—

(1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title . . . results in a decrease in the value of such entity's interest in such property;

**25. 11 U.S.C. § 1322(d)** provides:

The plan may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than 5 years.

### (2) Relief from Stay Pursuant to § 362(d)(2)

■ To obtain relief under § 362(d)(2), Movant must establish a prima facie case with respect to each vehicle that the Debtors lack equity in that vehicle and that the vehicle is not necessary to an effective reorganization of the Debtors. The Movant has the burden of proof on the Debtors' lack of equity.[26] Most courts hold that a debtor lacks equity when the balance of all debts secured by liens on the property exceed the fair market value of the property. *Mendoza v. Temple–Inland Mortgage Corp. (In re Mendoza),* 111 F.3d 1264, 1272 (5th Cir. 1997); *In re Indian Palms Assoc., Ltd.,* 61 F.3d 197 (3d Cir.1995); *Stewart v. Gurley,* 745 F.2d 1194 (9th Cir.1984). The Debtors must persuade the Court that not only is each vehicle necessary to effect their reorganization, but also that their Chapter 13 plan has "a reasonable possibility of successful reorganization within a reasonable time." *United Savings Ass'n v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 376, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988).

On April 3, 1998, when the Debtors filed Schedule D—Creditors Holding Secured Claims in their pending Chapter 13 case, they estimated the fair market value of the car to be $13,300.00 and that of the van to be $5,600.00. They listed the balance of debt on the car as $14,500.00 and on the van as $5,600.00. Debtors therefore claimed no equity in either of the vehicles at commencement of their case. Further, Movant's proofs of claims filed on June 4, 1998 reflect principal balances of $19,026.45 on the car debt and $6,916.50 on the van debt. Although Debtors traded a 1991 Oldsmobile Cutlass Sierra worth $5,000.00 when purchasing the van in 1996 and may have traded a 1990 or 1991 Ford Tempo plus between $800.00 and $1,000.00 as the downpayment when leasing the car in 1996, these downpayments are reflected in Movant's principal balance on each debt. Based on the foregoing, the Court holds that Movant sustained its burden of showing the Debtors lack equity in either the car or the van.

However, Debtors met their burden of proof by demonstrating that both vehicles are necessary to their effective reorganization. Debtor testified that he is a self-employed minister and his wife is a self-employed counselor for a church. This information is reflected on the Debtors' Schedule I. Debtor stated that they rely on the car as their primary means of personal transportation because it is large enough to accommodate his wife and her wheelchair. Thus, granting Movant relief from stay with respect to the car would leave Debtor's wife without any primary means of transportation, thus possibly preventing her from performing her job to earn her portion of their joint income. Debtor also said that they rely on the van for transportation services required for the church's babysitting service and for transporting the elderly to and from church. Without use of the van, church membership and, therefore, contributions on which Debtors rely for the majority of their income could easily decline.

Debtors also presented evidence that their Chapter 13 plan has "a reasonable possibility of successful reorganization within a reasonable time," as required by the *Timbers* decision. In their prior Chapter 7 case, Debtors discharged many of their unsecured debts. Their pending Chapter 13 plan proposes to repay 100% of debts owed to all secured creditors as well as credit card debt guaranteed by Debtors.[27] The Debtor's testimony that their combined monthly income from the church ministry is presently $3,500.00 to $4,000.00 is supported by the Debtors' Schedule I. Their Schedule J reflects sufficient excess income after monthly expenses to pay their proposed monthly plan payments of $1,530.00. Debtor also testified that they now have additional monthly income of $1,000.00 to $1,500.00 from maintenance and yard work that he performs, which is not included in the Debtors' schedules. Thus, Debtors presented sufficient evidence that

---

**26.** See footnote 15, *supra.*

**27.** The Debtor listed credit card debts in the Debtors' Chapter 13 plan which were opened in his mother's name, but which he personally guaranteed and incurred.

they will be able to afford their plan payments. Further, the Debtors' Amended Chapter 13 Plan reflects that Debtors will be able to repay their creditors 100% over the proposed sixty month period. Additionally, the Debtors have demonstrated that they will make the monthly payments proposed in their reorganization plan, as reflected by the Chapter 13 trustee's Interim Statement for June 18, 1998.

To sum up, Movant established its burden of proof that Debtors lack equity in the car and van. Debtors then presented sufficient proof that the car and van are necessary for their effective reorganization and that their proposed reorganization plan has a reasonable possibility of success within a reasonable time frame of sixty months. Therefore, Movant's motion for relief from stay under § 362(d)(2) is due to be denied.

### C. Movant's Objection to Confirmation of Debtors' Proposed Plan

■ Under 11 U.S.C. § 1324 (1994),[28] a party in interest may object to confirmation of the debtor's proposed Chapter 13 plan. In the present case, Movant filed an Objection to Confirmation alleging that Debtors' proposed Chapter 13 plan fails to provide Movant with adequate protection of its security interests in the car and van. However, Debtors filed an amended plan summary prior to the hearing in which they propose an increase in fixed monthly payments to Movant to satisfy the car and van debts within sixty months. Their schedules reflect that they can afford the increased monthly plan payments of $1,530.00. Additionally, Debtors have insurance covering both vehicles and Debtor testified that these vehicles are being maintained in good condition. Thus, Movant's property interests will be adequately protected under the proposed Chapter 13 plan. Movant's objection to confirmation is therefore due to be denied.

### D. Conclusion

The Debtors' failure to comply with § 521(2) in their prior Chapter 7 case does not constitute a basis for granting Movant's motion for relief and/or objection to confirmation in the Debtors' present Chapter 13 case. Debtors presented sufficient evidence that Movant's interests in the car and van are adequately protected and should continue to be adequately protected under terms of their proposed Chapter 13 plan. Debtors also showed that both the car and van are necessary for their effective reorganization. Accordingly, it is hereby

**ORDERED, ADJUDGED AND DECREED** that Movant's Motion for Relief from Stay is **DENIED,** subject to the Debtors providing written proof of insurance within ten days of the date of entry of this Memorandum Opinion and Order to both the Court and the Movant's attorney at his correct mailing address. If the Debtor fails to provide proof of insurance to this Court and to Movant as provided within the ten-day period, Movant shall be entitled to relief from the automatic stay without further order of this Court. Furthermore, if the insurance placed on the car or on the van should lapse in the future, the Movant shall give the Debtors and their attorney ten days' written notice to provide proof of reinstatement or new coverage. Should the Debtors fail to provide such proof within the ten-day period, the Movant shall be granted relief from stay without further order of this Court.

It is further **ORDERED, ADJUDGED AND DECREED** that Movant's Objection to Confirmation is **OVERRULED.**

---

28. **11 U.S.C. § 1324** provides:

After notice, the court shall hold a hearing on confirmation of the plan. A party in interest may object to confirmation of the plan.