[This opinion has been published in *Ohio Official Reports* at 84 Ohio St.3d 170.]

CINCINNATI BAR ASSOCIATION *v.* BERTSCHE.

[Cite as *Cincinnati Bar Assn. v. Bertsche*, 1998-Ohio-573.]

*Attorneys at law—Misconduct–Indefinite suspension—Violating several Disciplinary Rules in the course of bankruptcy practice.*

(No. 98-824—Submitted August 19, 1998—Decided December 9, 1998.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 96-30.

———————————

{¶ 1} On October 6, 1997, relator, Cincinnati Bar Association, filed an amended complaint charging respondent, W. David Bertsche, Jr., of Cincinnati, Ohio, Attorney Registration No. 0009029, with violating several Disciplinary Rules in the course of his bankruptcy practice. After respondent answered, the matter was heard on November 14 and December 17, 1997, by a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board").

{¶ 2} The panel found that respondent, who primarily practiced in Cincinnati, also maintained a law office in Norwood, Ohio, staffed by Wayne E. West, a nonlawyer. West, who identified himself as a paralegal, interviewed clients, obtained information, prepared documents, and secured signings of Chapter 13 bankruptcy petitions and other legal documents. From time to time respondent would visit the Norwood office, interview clients, and oversee the signing of documents. However, respondent exercised little supervision over West, who controlled the office bank accounts, but did not keep a detailed record of disbursements. Respondent's Norwood office account did not segregate operating funds from client funds, and some of the checks West wrote on the account were returned for insufficient funds. The panel concluded that respondent's delegation

of matters to West and his lack of supervision over him violated DR 6-101(A)(3) (a lawyer shall not neglect an entrusted legal matter).

{¶ 3} The panel found that in 1995, respondent aided six of his clients for whom he had filed Chapter 13 bankruptcy cases to obtain loans from Associates Financial Services Corporation for the purpose of paying off their Chapter 13 balances. The effect of the procedure was to obtain early bankruptcy discharges for the clients and remove them from the budgetary constraints of Chapter 13 while paying off, pursuant to the Chapter 13 plan percentages, only those creditors who had filed claims in the cases. To each of the amounts loaned to pay off the Chapter 13 balances, Associates added $1,200 to $1,900 in fees, which it paid to respondent or to CSI, an entity designated by him. Respondent considered the fees he received from Associates as similar to those which a mortgage broker would charge a client for arranging a loan. He did not tell his clients in advance about the fees that would be added to the amounts they borrowed, nor did he attend the loan closings. He also failed to file in the bankruptcy court fee disclosure statements in each case. In two of the cases, he failed to file applications on behalf of his debtor clients to incur debt. In two other cases, he filed applications for the debtor to incur debt after the debt was incurred.

{¶ 4} The bankruptcy court, after sitting *en banc* to hear a motion by the Chapter 13 trustee to hold respondent in contempt for failure to make the appropriate applications, found that respondent had not adequately explained the fees he received. It ordered that he file detailed fee applications, and pay the Chapter 13 trustee $1,812.50 for the attorney fees incurred in bringing the complaint. Respondent did not comply with the bankruptcy court's order.

{¶ 5} The panel concluded that respondent accepted compensation from entities other than his clients in violation of DR 5-107(A)(1) (except with the client's consent and after full disclosure, a lawyer shall not accept compensation from anyone other than his client), 5-107(A)(2) (except with the client's consent

and after full disclosure, a lawyer shall not accept from anyone other than his client a thing of value related to his representation of the client), 5-105(A) (a lawyer shall decline employment if his professional judgment on behalf of a client is likely to be affected), 5-101(A) (except with consent after full disclosure, a lawyer shall not accept employment where his professional judgment may be affected by his business or personal interests), and 7-106(A) (a lawyer shall not disregard a standing rule of a tribunal or a ruling made in course of a proceeding, but may take appropriate steps to test the rule or ruling).

{¶ 6} The panel found that in two of these Chapter 13 cases, Associates paid fees not to respondent, but to CSI, an entity which was formerly a collection business operated by West. This money was apparently paid into the general fund of the office, and no account was kept for receipts from clients. The panel concluded that respondent's actions violated DR 9-102(A) (funds of clients shall be deposited in a bank account in which no funds of the lawyer are deposited). It also concluded that respondent's failure to disclose the fees, failure to file applications for court approval of fees, and his use of CSI to receive fees violated DR 1-102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation), 1-102(A)(5) (a lawyer shall not engage in conduct prejudicial to the administration of justice), and 7-102(A)(3) (a lawyer shall not conceal or fail to disclose that which he is required by law to reveal).

{¶ 7} In addition, the panel found that in violation of the bankruptcy code and rules, respondent failed to disclose the advance fee of $650 paid to him by another client, Robert Berning, and, as a consequence, was ordered by the bankruptcy judge to refund the advance fee. Because of respondent's failure to disclose this advance fee, the panel concluded that he violated DR 7-109(A) (a lawyer shall not suppress evidence that he has a legal obligation to reveal) and 7-102(A)(6) (a lawyer shall not participate in the creation of evidence when he knows that the evidence is false).

**{¶ 8}** The panel also found that Christine Cooper paid respondent an advance fee to file a bankruptcy proceeding. When respondent failed to file the case in a timely manner, the electric company terminated Cooper's power. Moreover, respondent failed to appear at Cooper's Section 341 meeting of creditors in her bankruptcy case, failed to take steps to preserve the bankruptcy code's automatic stay protecting Cooper's house, and failed to respond to Cooper's correspondence discharging him and requesting a return of the fees she had paid. The panel concluded that respondent's conduct violated DR 6-101(A)(3), 7-101(A)(2) (a lawyer shall not fail to carry out a contract of employment), 7-101(A)(3) (a lawyer shall not prejudice a client during the course of a professional relationship), and 9-102(B)(4) (a lawyer shall promptly pay to the client funds which belong to the client). The panel also found that respondent failed to withdraw from the Cooper case in a proper fashion and concluded that he violated DR 2-110(A)(2) (a lawyer shall not withdraw from employment without taking reasonable steps to see that his client is not prejudiced) and 2-110(B)(4) (a lawyer shall withdraw from employment when discharged by a client).

**{¶ 9}** The panel found that Clyde E. Campbell employed respondent to file a "Chapter 20" bankruptcy case, which is the popular name for a Chapter 7 bankruptcy to eliminate a debtor's dischargeable debt followed by a Chapter 13 bankruptcy to pay over time those debts not dischargeable and remaining nonrecourse mortgage debt. Campbell paid respondent in advance for services in the Chapter 7 case and for court costs in both cases. After filing the Chapter 7 case, respondent failed to file a case for Campbell under Chapter 13. As a result, the bankruptcy automatic stay which expired in the Chapter 7 case was not reinstated in the Chapter 13 case, and Campbell's mortgagee foreclosed on and sold Campbell's home. Despite Campbell's requests, respondent did not return the fees and costs Campbell paid to him. The panel concluded that respondent's conduct

4

with respect to Campbell violated DR 2-106(A) (a lawyer shall not collect an excessive fee), 9-102(A), 9-102(B)(4), 6-101(A)(3), 7-101(A)(2), and 7-101(A)(3).

{¶ 10} The panel recommended that respondent be indefinitely suspended from the practice of law. The board adopted the findings, conclusions, and recommendation of the panel.

_____

*James K. Rice, Nancy B. Herbert*, *David T. Croall* and *Edwin W. Patterson III*, for relator.

*David J. Boyd*, for respondent.

_____

*Per Curiam.*

{¶ 11} We adopt the findings of the board. Especially troubling to us, as it was to the bankruptcy court in Cincinnati, is respondent's receipt of funds from Associates upon the refinancing of his clients' real estate. As that court observed, respondent was either charging his clients fees for finding appropriate financing, in which case he failed to file the necessary fee applications with the bankruptcy court, or respondent was receiving finder's fees from Associates for bringing clients to it, in which case respondent was representing Associates and was in a conflict-of-interest situation.

{¶ 12} Even if we accept respondent's argument that he represented his Chapter 13 clients in the refinancings, we cannot adopt his conclusion that he could set fees unilaterally and that fee applications and disclosures were not necessary. EC 2-18 of our Ethical Considerations provides that an attorney should reach a full and clear agreement with his client about the basis of his fee before he undertakes the work. Yet respondent did not tell his clients that he would receive a fee for negotiating their loans with Associates. It was only at the time when the loans were closed that respondent's clients, eager to complete the transactions and exit from Chapter 13, were informed that a fee for respondent would be added to their loans.

Predictably, they did not object. This situation is similar to *Columbus Bar Assn. v. Zauderer* (1997), 80 Ohio St.3d 435, 438, 687 N.E.2d 410, 412-413, in which we suspended an attorney who, in control of settlement funds, attempted a unilateral alteration of his contingent fee contracts with his clients before disbursing the money.

**{¶ 13}** Moreover, as Bankruptcy Judge Vincent Aug observed at the *en banc* hearing in bankruptcy court, the bankruptcy process is, in part, a process to protect debtors. "And judges * * * look to see whether or not a person is doing something that is unwise * * *." To protect debtors from attorneys who overreach, Section 329, Title 11, U.S.Code, and Fed.R.Bankr.P. 2016(b) require that the attorney for a debtor disclose to the bankruptcy court the compensation paid or promised for services and the source of the compensation. The rule specifically requires the attorney to file a "supplemental statement" within fifteen days "after any payment or agreement not previously disclosed." Fed.R.Bank.P. 2017(b) provides for an examination of these disclosed payments "for services in any way related to the case." These rules are "premised on the need for and appropriateness of judicial scrutiny of arrangements between a debtor and his attorney to protect the creditors of the estate and the debtor against overreaching by an officer of the court who is in a peculiarly advantageous position to impose on both the creditors and his client." Advisory Committee Note to Fed.R.Bankr.P. 2017.

**{¶ 14}** Respondent neither advised his clients in advance of his fees for loan refinancing nor filed the required applications to inform the court of those fees. As a consequence, respondent set his fee unilaterally, with no input from his clients or the court. Thus, if respondent represented his clients in the loan transactions, he failed to adhere to our Ethical Considerations and failed to comply with the federal bankruptcy rules.

**{¶ 15}** The record indicates that at least two of respondent's clients believed that the $1,500 added to their loans was a fee that Associates paid to respondent for

referring the clients to it. If such was the case, respondent was in a conflict-of-interest situation. In either this situation or the unilateral-fee-setting situation, respondent was in violation of our disciplinary standards.

{¶ 16} Therefore, with respect to the matters involving the six clients for whom respondent arranged financing with Associates, we adopt the conclusions of the board. We also adopt the conclusions of the board relating to respondent's conduct of his law office and handling of office accounts. In addition, we adopt the conclusions of the board in the Berning and Cooper matters. We recognize that serial filings under Chapter 7 and Chapter 13 have been found acceptable in *Johnson v. Home State Bank* (1991), 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66, but because respondent failed to complete the "Chapter 20" program for Campbell, we adopt the board's conclusions in that matter also. Respondent is hereby suspended indefinitely from the practice of law in Ohio. Costs are taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

————————————