T.C. Memo. 2009-292

UNITED STATES TAX COURT

GLENN LITWAK, Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21122-07L.                Filed December 21, 2009.

Robert T. Leonard, for petitioner.

Laura L. Buckley, Karen Nicholson Sommers, and Jeffrey A. Schlei, for respondent.

MEMORANDUM OPINION

VASQUEZ, Judge:  Pursuant to section 6330(d),[1] petitioner seeks review of respondent's determination to proceed with

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

collection of his unpaid 2000, 2001, and 2002 Federal income tax liabilities. The issue for decision is whether respondent abused his discretion in sustaining his proposed levy.

## Background

The parties submitted this case fully stipulated pursuant to Rule 122. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in California at the time he filed his petition.

Petitioner is an attorney and real estate broker. He operates two S corporations: Glenn Litwak, A Professional Corporation, and GTL Realty, Inc. Both corporations pay him wages reported on Forms W-2, Wage and Tax Statement. He also receives net business income, which he reports on Schedules K-1, Shareholder's Share of Income, Credits, Deductions, etc., from both S corporations.

Petitioner filed Federal income tax returns for 2000, 2001, and 2002 but failed to pay the tax shown on the returns as due. Respondent filed notices of Federal tax lien (Federal tax liens) for tax years 2000, 2001, 2002, 2004, and 2005.

On May 5, 2006, respondent mailed a Final Notice--Notice of Intent to Levy and Notice of Your Right to a Hearing, for 2000, 2001, and 2002 to petitioner.

On June 6, 2006, respondent received petitioner's timely filed Form 12153, Request for a Collection Due Process Hearing, for 2000, 2001, and 2002.

Offer-in-Compromise

On December 11, 2006, respondent received petitioner's Form 656, Offer in Compromise (OIC), as to tax liabilities for 1997, 1998, 2000, 2001, 2002, 2004, and 2005.  Petitioner attached to the OIC a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals; a Form 433-B, Collection Information Statement for Businesses, for Glenn Litwak, A Professional Corporation; and a Form 433-B for GTL Realty, Inc. Petitioner offered to settle the following outstanding Federal income tax liabilities (including interest computed to November 2006) for $15,000 based on doubt as to collectibility:

| Tax | Year | Liability |
| --- | --- | --- |
| Form 1040 | 1997 | $69,433.27 |
| Form 1040 | 1998 | 32,671.89 |
| Form 1040 | 2000 | 48,884.13 |
| Form 1040 | 2001 | 67,150.10 |
| Form 1040 | 2002 | 33,851.78 |
| Form 1040 | 2004 | 19,172.22 |
| Form 1040 | 2005 | 18,812.85 |
| Total | | 289,976.24 |

Petitioner's counsel asserted that petitioner was unable to make monthly payments and that petitioner's net realizable equity in assets was $5,250.  Petitioner would be able to borrow $15,000 from family members and friends, and, accordingly, offered to

compromise all his outstanding Federal income tax liabilities for this amount.

Petitioner submitted a letter with his OIC which discussed the potential dischargeability of his Federal income tax liabilities in bankruptcy. The letter stated: "The taxpayer desires to reach an agreement through the Offer in Compromise Program and avoid bankruptcy. However, bankruptcy is a viable option and consideration of an offer should be a calculated business decision." Petitioner's counsel asserted that petitioner's Federal income tax liabilities for 1997, 1998, 2000, 2001, 2002, 2004, and 2005 were currently dischargeable or would soon be dischargeable in bankruptcy.

Settlement Officer's Review

On April 16, 2007, Settlement Officer Nathan August (Mr. August) reviewed petitioner's OIC and the attached information. Mr. August determined that petitioner's 2004 and 2005 Federal income tax liabilities would not be discharged in bankruptcy. He determined petitioner had a current ability to pay $1,390 per month, on the basis of the difference between petitioner's reported $12,440 monthly income and monthly expenses of $11,050. He noted that petitioner had an unencumbered BMW car with a current value of $10,000.

On April 17, 2007, Mr. August sent a letter to petitioner scheduling a meeting for July 16, 2007, and requesting additional

documentation. Petitioner provided the documents, and Mr. August reviewed the information therein. He analyzed the bank statements, Forms W-2, and Schedules K-1 petitioner provided and determined that the income figures that petitioner reported on his Form 433-A were accurate. Thus, Mr. August determined that petitioner received $12,440 per month in gross wages, net business income, and interest income. Using the Internal Revenue Service's National Standard Allowable Expense Table, Mr. August determined that petitioner's total allowable monthly expenses were $7,767 and concluded that petitioner had the ability to pay $4,673 per month towards his delinquent tax liabilities. Mr. August also determined that petitioner's net realizable equity in assets was $8,400. Accordingly, Mr. August calculated that petitioner's net realizable equity in assets of $8,400 plus his future income value of $224,304 ($4,673 times 48 months) produced a reasonable collection potential of $232,704.

Section 6330 Hearing

On August 2, 2007, Mr. August held a section 6330 hearing with petitioner and petitioner's counsel. During the section 6330 hearing petitioner conceded net realizable equity in assets of $8,400.[2] Petitioner's counsel stated that petitioner could increase his OIC to $23,000. Petitioner's counsel asserted that

---

[2] Petitioner later argued that the $8,400 of assets would be exempt from the bankruptcy estate in his hypothetical ch. 7 bankruptcy.

petitioner had offered more than his reasonable collection potential because his outstanding Federal income tax liabilities for all years except for 2005 would be discharged in bankruptcy. Petitioner's counsel informed Mr. August that petitioner intended to file for bankruptcy in October 2008 to discharge his Federal income tax liabilities and credit card debt.

Mr. August told petitioner that he did not believe a bankruptcy court would discharge petitioner's Federal income tax liabilities because petitioner was not insolvent. Further, he had determined that petitioner had an ability to pay $4,673 per month towards his outstanding Federal income tax liabilities.

Petitioner's counsel stated that petitioner was not able to pay $4,673 per month and expected his income to decrease because he had lost a major client. Mr. August told petitioner's counsel that the claim that petitioner's income would decrease was speculative and lacked supporting documentation. He further determined that petitioner's bank account deposit records covering the last 12 months documented high income for petitioner and his two S corporations.

On August 20, 2007, respondent mailed to petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330. Respondent rejected petitioner's OIC of $15,000 and sustained the proposed levy because the OIC did not represent petitioner's reasonable collection potential.

OPINION

I.  Jurisdiction and Standard of Review

Section 6330(a) provides that the Secretary shall furnish a taxpayer with written notice of his right to a hearing before any property is levied upon.  Section 6330 further provides that the taxpayer may request administrative review of the matter (in the form of a hearing) within a 30-day period.  Sec. 6330(a) and (b).

Pursuant to section 6330(c)(2)(A), a taxpayer may raise at the section 6330 hearing any relevant issue with regard to the Commissioner's collection activities, including spousal defenses, challenges to the appropriateness of the Commissioner's intended collection action, and alternative means of collection.  Sego v. Commissioner, 114 T.C. 604, 609 (2000); Goza v. Commissioner, 114 T.C. 176, 180 (2000).

Petitioner does not dispute his underlying Federal income tax liabilities for 2000, 2001, or 2002 or the validity of the Federal tax liens respondent filed for 2000, 2001, 2002, 2004, or 2005.  Rather, petitioner disputes respondent's rejection of his OICs.[3]  Where the validity of the underlying tax liability is not at issue, we review the Commissioner's determination for abuse of discretion.  Sego v. Commissioner, supra at 610.

---

[3]  Petitioner did not formally submit an OIC of $23,000.  However, respondent has conceded that petitioner made an OIC of $23,000.

Under an abuse of discretion standard, a taxpayer must prove that the Commissioner exercised his discretion arbitrarily, capriciously, or without sound basis in fact or law.  Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

II.  Offer-in-Compromise

Section 7122(a) authorizes the Commissioner to compromise a taxpayer's outstanding liabilities.  The regulations and procedures under section 7122 provide the exclusive method of effecting a binding nonjudicial compromise.  Laurins v. Commissioner, 889 F.2d 910, 912 (9th Cir. 1989), affg. Norman v. Commissioner, T.C. Memo. 1987-265; Shumaker v. Commissioner, 648 F.2d 1198, 1199-1200 (9th Cir. 1981) (citing Botany Worsted Mills v. United States, 278 U.S. 282, 288-289 (1929)), affg. in part, revg. in part and remanding per curiam on other grounds T.C. Memo. 1979-71.

A compromise based on "doubt as to collectibility" may be accepted "where the taxpayer's assets and income are less than the full amount of the liability."  Sec. 301.7122-1(b)(2), Proced. & Admin. Regs.  With respect to OICs on this basis, we stated in Murphy v. Commissioner, 125 T.C. 301, 309 (2005), affd. 469 F.3d 27 (1st Cir. 2006):

> Generally, under * * * [the Commissioner's] administrative pronouncements, an offer to compromise based on doubt as to collectibility will be acceptable only if the offer reflects the reasonable collection potential of the case (i.e., that amount, less than the full liability, that the IRS could collect through

> means such as administrative and judicial collection
> remedies). Rev. Proc. 2003-71, sec. 4.02(2), 2003-2
> C.B. 517. * * *

See also Internal Revenue Manual (IRM), pt. 5.8.1.1.3(3) (Sept. 1, 2005) ("Absent special circumstances, a Doubt as to Collectibility (DATC) offer amount must equal or exceed a taxpayers [sic] reasonable collection potential (RCP) in order to be considered for acceptance.").

Reasonable Collection Potential

The taxpayer's RCP includes realizable equity in assets owned by the taxpayer as well as amounts collectible from the taxpayer's future income after allowing for payment of necessary living expenses. Id. pt. 5.8.4.4.1. Generally, where an IRS Appeals employee has followed the Commissioner's guidelines to ascertain a taxpayer's RCP and rejected the taxpayer's collection alternative on that basis, we have found no abuse of discretion. Lemann v. Commissioner, T.C. Memo. 2006-37; see also Schulman v. Commissioner, T.C. Memo. 2002-129.

Petitioner made OICs of $15,000 and $23,000 to settle his outstanding Federal income tax liabilities for 1997, 1998, 2000, 2001, 2002, 2004, and 2005. In a letter submitted with his $15,000 OIC, petitioner threatened to file for bankruptcy. Petitioner again threatened to file for bankruptcy at the August 2, 2007, section 6330 hearing and stated he would file for bankruptcy in October 2008 (nearly 15 months in the future).

Petitioner argues respondent abused his discretion by not accepting either of petitioner's OICs.

Mr. August determined that petitioner's RCP was $232,704. Petitioner did not assign any error to Mr. August's determination of petitioner's $232,704 RCP in his petition. Rule 331(b)(4). Consequently, petitioner's $15,000 and $23,000 OICs failed to exceed his RCP. However, once petitioner threatened to file for bankruptcy, Mr. August took into account the potential impact of bankruptcy on petitioner's RCP when making his determination to reject petitioner's OICs and sustain the proposed levy.

When a taxpayer threatens bankruptcy, the impact of bankruptcy on the Internal Revenue Service's (IRS) ability to collect must be considered. "Offers in Compromise Before Bankruptcy", IRM pt. 5.8.10.2.2(1) (Sept. 1, 2005). While IRS officers are evaluating the acceptability of an OIC when the threat of bankruptcy is a consideration, the IRM instructs them to determine the RCP of the taxpayer. Id. pt. 5.8.10.2.2(4). The IRM further states that analysis of the collectibility if bankruptcy were filed, along with a financial analysis and a determination of liabilities that would be fully discharged, should result in the information necessary to make an informed decision regarding the offer and to attempt negotiation with the taxpayer. Id. pt. 5.8.10.2.2(5).

Respondent's determination regarding whether petitioner's unpaid Federal income tax liabilities could be collected by levy if petitioner were to file for bankruptcy required an interpretation of bankruptcy law.  If respondent's determination was based on erroneous views of the law and petitioner's unpaid Federal income tax liabilities could not be collected by levy, then we must reject respondent's view and find that there was an abuse of discretion.  See Iannone v. Commissioner, 122 T.C. 287, 291 (2004) (citing Swanson v. Commissioner, 121 T.C. 111, 119 (2003), and Ramsdell v. Commissioner, T.C. Memo. 2003-317).

It is undisputed that petitioner's 2005 Federal income tax liability of approximately $18,812.85 (as of November 2006) would not be discharged in a bankruptcy filed in October 2008.  It is also undisputed that petitioner's 1997, 1998, 2000, 2001, and 2002 Federal income tax liabilities would be discharged in such a bankruptcy.  Respondent disputes petitioner's contention that petitioner's 2004 Federal income tax liability of approximately $19,172.22 (as of November 2006) would be discharged in such a bankruptcy.  We need not decide whether the 2004 Federal income tax liability would be discharged.

Assuming arguendo that petitioner's Federal income tax liabilities for all years except 2005 would be discharged in

bankruptcy, $18,812.85[4] would be collectible in personam from petitioner.  See Iannone v. Commissioner, supra at 293 (citing Johnson v. Home State Bank, 501 U.S. 78, 84 (1991)).  This exceeds the $15,000 OIC petitioner made, and accordingly, respondent did not abuse his discretion when he refused to accept petitioner's $15,000 OIC.

Next, petitioner made an OIC of $23,000.  Both parties agree that petitioner had net realizable equity in assets of $8,400.  Petitioner asserts that these assets would be exempt from the bankruptcy estate.

Assuming arguendo that petitioner's assertion is true and the assets composing petitioner's net realizable equity in assets of $8,400 would be exempt from the bankruptcy estate, these assets would remain encumbered by the valid Federal tax liens.  See Iannone v. Commissioner, supra at 293.  Respondent's Federal tax liens for 2000, 2001, 2002, 2004, and 2005 have been stipulated and are not at issue.  As we stated in Iannone, Federal tax liens are not extinguished by personal discharge in bankruptcy.  Any existing Federal tax liens remain in effect and attach to assets owned before the date of filing the bankruptcy petition.  Iannone v. Commissioner, supra at 293 (citing 11 U.S.C. section 522(c)(2)(B) (2000) and Connor v. United States, 27 F.3d 365, 366 (9th Cir. 1994) ("A preexisting lien on

---

[4] Petitioner owed $18,812.85 in November 2006.

property, however, remains enforceable against that property even after an individual's personal liability has been discharged.")).

Even if petitioner's Federal income tax liabilities were discharged in personam for all years except 2005 ($18,812.85) and all of petitioner's assets ($8,400) were exempt from the bankruptcy estate, the sum of the amounts collectible from petitioner in personam and in rem would exceed petitioner's OIC of $23,000. Respondent would be able to collect the 2005 Federal income tax liability of approximately $18,812.85 from petitioner in personam. Additionally, respondent would be able to collect $8,400 from petitioner in rem using assets exempt from petitioner's estate because the Federal tax liens for 2000, 2001, 2002, 2004, and 2005 precede petitioner's hypothetical October 2008 bankruptcy filing and those liens attached to the exempt assets. Accordingly, respondent did not abuse his discretion when he refused to accept petitioner's $23,000 OIC.

In reaching our holdings, we have considered all arguments made, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.