JOHNSON *v.* HOME STATE BANK

No. 90–693.   Argued April 16, 1991—Decided June 10, 1991

W. *Thomas Gilman* argued the cause for petitioner. With him on the briefs were *Martin R. Ufford, Patricia A. Gilman, Edward J. Nazar, Laurie B. Williams, Mary Patricia Hesse,* and *Matthew C. Hesse.*

*Calvin D. Rider* argued the cause for respondent. With him on the brief were *Patricia M. Dengler* and *Robert C. Brown.* *

---

*\*David A. Searles, Henry J. Sommer, Eric L. Frank,* and *Mitchell W. Miller* filed a brief for the Consumers Education and Protective Association, Inc., et al. as *amici curiae* urging reversal.

Briefs of *amici curiae* urging affirmance were filed for the American Bankers Association by *John J. Gill III* and *Michael F. Crotty;* and for the Kansas Bankers Association by *Anne L. Baker* and *Charles N. Henson.*

JUSTICE MARSHALL delivered the opinion of the Court.

The issue in this case is whether a debtor can include a mortgage lien in a Chapter 13 bankruptcy reorganization plan once the personal obligation secured by the mortgaged property has been discharged in a Chapter 7 proceeding. We hold that the mortgage lien in such a circumstance remains a "claim" against the debtor that can be rescheduled under Chapter 13.

I

This case arises from the efforts of respondent Home State Bank (Bank) to foreclose a mortgage on the farm property of petitioner. Petitioner gave the mortgage to secure promissory notes to the Bank totaling approximately $470,000.[1] When petitioner defaulted on these notes, the Bank initiated foreclosure proceedings in state court. During the pendency of these proceedings, petitioner filed for a liquidation under Chapter 7 of the Bankruptcy Code. Pursuant to 11 U. S. C. § 727, the Bankruptcy Court discharged petitioner from personal liability on his promissory notes to the Bank. Notwithstanding the discharge, the Bank's right to proceed against petitioner *in rem* survived the Chapter 7 liquidation. After the Bankruptcy Court lifted the automatic stay protecting petitioner's estate, see 11 U. S. C. § 362, the Bank reinitiated the foreclosure proceedings.[2] Ultimately, the state court entered an *in rem* judgment of approximately $200,000 for the Bank.

Before the foreclosure sale was scheduled to take place, petitioner filed the Chapter 13 petition at issue here. In his

---

[1] At the time at which the mortgage was executed, petitioner co-owned the property in question. However, by the time petitioner filed the Chapter 13 petition at issue in this case, he had acquired his wife's interest in the property. In addition, although petitioner's wife was a party in various of the proceedings surrounding disposition of the property, for simplicity we refer only to petitioner's role in these proceedings.

[2] During the course of the proceedings, the Bank acquired from another creditor a superior mortgage interest in petitioner's property.

Chapter 13 plan, petitioner listed the Bank's mortgage in the farm property as a claim against his estate and proposed to pay the Bank four annual installments and a final "balloon payment" equal in total value to the Bank's *in rem* judgment. Over the Bank's objection, the Bankruptcy Court confirmed the Chapter 13 plan. The Bank appealed to the District Court, arguing that the Code does not allow a debtor to include in a Chapter 13 plan a mortgage used to secure an obligation for which personal liability has been discharged in Chapter 7 proceedings; the Bank argued in the alternative that the Bankruptcy Court had erred in finding that petitioner had proposed the plan in good faith and that the plan was feasible. The District Court accepted the first of these arguments and disposed of the case on that ground. See *In re Johnson*, 96 B. R. 326, 328–330 (Kan. 1989).

The Court of Appeals affirmed. See 904 F. 2d 563 (CA10 1990). Emphasizing that petitioner's personal liability on the promissory notes secured by the mortgage had been discharged in the Chapter 7 proceedings, the court reasoned that the Bank no longer had a "claim" against petitioner subject to rescheduling under Chapter 13. See *id.*, at 565, 566. Like the District Court, the Court of Appeals disposed of the case without considering the Bank's contentions that Johnson's plan was not in good faith and was not feasible. See *id.*, at 566.

In contrast to the decision of the Tenth Circuit in this case, two other Circuit Courts of Appeals have concluded that a debtor *can* include a mortgage lien in a Chapter 13 plan even after the debtor's personal liability on the debt secured by the property has been discharged in a Chapter 7 liquidation. See *In re Saylors*, 869 F. 2d 1434, 1436 (CA11 1989); *In re Metz*, 820 F. 2d 1495, 1498 (CA9 1987). Having granted certiorari to resolve this conflict, see 498 U. S. 1066 (1991), we now reverse.

## II

Chapter 13 of the Bankruptcy Code provides a reorganization remedy for consumer debtors and proprietors with relatively small debts. See generally H. R. Rep. No. 95–595, pp. 116–119 (1977). So long as a debtor meets the eligibility requirements for relief under Chapter 13, see 11 U. S. C. § 109(e),[3] he may submit for the bankruptcy court's confirmation a plan that "modif[ies] the rights of holders of secured claims . . . or . . . unsecured claims," § 1322(b)(2), and that "provide[s] for the payment of all or any part of any [allowed] claim," § 1322(b)(6). The issue in this case is whether a mortgage lien that secures an obligation for which a debtor's personal liability has been discharged in a Chapter 7 liquidation is a "claim" subject to inclusion in an approved Chapter 13 reorganization plan.

To put this question in context, we must first say more about the nature of the mortgage interest that survives a Chapter 7 liquidation. A mortgage is an interest in real property that secures a creditor's right to repayment. But unless the debtor and creditor have provided otherwise, the creditor ordinarily is not limited to foreclosure on the mortgaged property should the debtor default on his obligation; rather, the creditor may in addition sue to establish the debtor's *in personam* liability for any deficiency on the debt and may enforce any judgment against the debtor's assets generally. See 3 R. Powell, The Law of Real Property ¶ 467 (1990). A defaulting debtor can protect himself from personal liability by obtaining a discharge in a Chapter 7 liquida-

---

[3] Section 109(e) states:

"Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $100,000 and noncontingent, liquidated, secured debts of less than $350,000, or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $100,000 and noncontingent, liquidated, secured debts of less than $350,000 may be a debtor under chapter 13 of this title."

tion.  See 11 U. S. C. § 727.  However, such a discharge extinguishes *only* "the personal liability of the debtor."  11 U. S. C. § 524(a)(1).  Codifying the rule of *Long* v. *Bullard*, 117 U. S. 617 (1886), the Code provides that a creditor's right to foreclose on the mortgage survives or passes through the bankruptcy.  See 11 U. S. C. § 522(c)(2); *Owen* v. *Owen*, 500 U. S. 305, 308–309 (1991); *Farrey* v. *Sanderfoot*, 500 U. S. 291, 297 (1991); H. R. Rep. No. 95–595, *supra*, at 361.

Whether this surviving mortgage interest is a "claim" subject to inclusion in a Chapter 13 reorganization plan is a straightforward issue of statutory construction to be resolved by reference to "the text, history, and purpose" of the Bankruptcy Code.  *Farrey* v. *Sanderfoot, supra*, at 298.  Under the Code,

"'[C]laim' means—

"(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

"(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured."  11 U. S. C. § 101(5) (1988 ed., Supp. III).

We have previously explained that Congress intended by this language to adopt the broadest available definition of "claim."  See *Pennsylvania Dept. of Public Welfare* v. *Davenport*, 495 U. S. 552, 558, 563–564 (1990); see also *Ohio* v. *Kovacs*, 469 U. S. 274, 279 (1985).  In *Davenport*, we concluded that "'right to payment' [means] nothing more nor less than an enforceable obligation . . . ."  495 U. S., at 559.[4]

---

[4] Using this definition, we held in *Davenport* that restitution orders imposed as a condition of probation in state criminal proceedings were "claims" dischargeable in a Chapter 13 reorganization.  See 495 U. S., at 558–560.  Congress subsequently overruled the result in *Davenport*.  See

Applying the teachings of *Davenport*, we have no trouble concluding that a mortgage interest that survives the discharge of a debtor's personal liability is a "claim" within the terms of § 101(5). Even after the debtor's personal obligations have been extinguished, the mortgage holder still retains a "right to payment" in the form of its right to the proceeds from the sale of the debtor's property. Alternatively, the creditor's surviving right to foreclose on the mortgage can be viewed as a "right to an equitable remedy" for the debtor's default on the underlying obligation. Either way, there can be no doubt that the surviving mortgage interest corresponds to an "enforceable obligation" of the debtor.

The Court of Appeals thus erred in concluding that the discharge of petitioner's *personal liability* on his promissory notes constituted the complete termination of the Bank's *claim* against petitioner. Rather, a bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem*. Indeed, but for the codification of the rule of *Long* v. *Bullard*, *supra*, there can be little question that a "discharge" under Chapter 7 would have the effect of extinguishing the *in rem* component as well as the *in personam* component of any claim against the debtor. And because only "claims" are discharged under the Code,[5] the very need to codify *Long* v.

---

Criminal Victims Protection Act of 1990, Pub. L. 101–581, § 3, 104 Stat. 2865. It did so, however, by expressly withdrawing the Bankruptcy Court's power to discharge restitution orders under 11 U. S. C. § 1328(a), not by restricting the scope of, or otherwise amending, the definition of "claim" under § 101(5). Consequently, we do not view the Criminal Victims Protection Act as disturbing our general conclusions on the breadth of the definition of "claim" under the Code.

[5] A bankruptcy discharge extinguishes "the personal liability of the debtor with respect to any *debt.*" 11 U. S. C. § 524(a)(1) (emphasis added). As we explained in *Davenport*, "debt," which is defined under the Code as "liability on a claim," 11 U. S. C. § 101(12) (1988 ed., Supp. III), has a meaning coextensive with that of "claim" as defined in § 101(5). *Pennsyl-*

*Bullard* presupposes that a mortgage interest is otherwise a "claim."

The conclusion that a surviving mortgage interest is a "claim" under § 101(5) is consistent with other parts of the Code. Section 502(b)(1), for example, states that the bankruptcy court "shall determine the amount of [a disputed] claim . . . and shall allow such claim in such amount, except to the extent that . . . such claim is unenforceable against the debtor *and property of the debtor*" (emphasis added). In other words, the court must allow the claim if it is enforceable against *either* the debtor *or* his property. Thus, § 502(b)(1) contemplates circumstances in which a "claim," like the mortgage lien that passes through a Chapter 7 proceeding, may consist of nothing more than an obligation enforceable against the debtor's property. Similarly, § 102(2) establishes, as a "[r]ul[e] of construction," that the phrase "'claim against the debtor' includes claim against property of the debtor." A fair reading of § 102(2) is that a creditor who, like the Bank in this case, has a claim enforceable only against the debtor's property nonetheless has a "claim against the debtor" for purposes of the Code.

The legislative background and history of the Code confirm this construction of "claim." Although the pre-1978 Bankruptcy Act contained no single definition of "claim," the Act did define "claim" as "includ[ing] all claims of whatever character against a debtor *or its property*" for purposes of Chapter X corporate reorganizations. See 11 U. S. C. § 506(1) (1976 ed.) (emphasis added). It is clear that Congress so defined "claim" in order to confirm that creditors with interests enforceable only against the property of the debtor had "claims" for purposes of Chapter X, see S. Rep. No. 1916, 75th Cong., 3d Sess., 25 (1938); H. R. Rep. No. 1409, 75th Cong., 1st Sess., 39 (1937), and such was the

*vania Dept. of Public Welfare* v. *Davenport, supra,* at 558. Hence, a discharge under the Code extinguishes the debtor's personal liability on his creditor's claims.

established understanding of the lower courts. See generally 6 J. Moore & L. King, Collier on Bankruptcy ¶ 2.05, pp. 307–308 (14th ed. 1978) ("[I]t is to be noted that a claim against the debtor's property alone is sufficient" for Chapter X). In fashioning a single definition of "claim" for the 1978 Bankruptcy Code, Congress intended to "adop[t] an *even broader* definition of claim than [was] found in the [pre-1978 Act's] debtor rehabilitation chapters." H. R. Rep. No. 95–595, at 309 (emphasis added); accord, S. Rep. No. 95–989, pp. 21–22 (1978); see also *Pennsylvania Dept. of Public Welfare* v. *Davenport, supra,* at 558, 563–564 (recognizing that Congress intended broadest available definition of claim). Presuming, as we must, that Congress was familiar with the prevailing understanding of "claim" under Chapter X of the Act, see *Cottage Savings Assn.* v. *Commissioner,* 499 U. S. 554, 562 (1991); *Cannon* v. *University of Chicago,* 441 U. S. 677, 698–699 (1979), we must infer that Congress fully expected that an obligation enforceable only against a debtor's property would be a "claim" under § 101(5) of the Code.

The legislative history surrounding § 102(2) directly corroborates this inference. The Committee Reports accompanying § 102(2) explain that this rule of construction contemplates, *inter alia,* "nonrecourse loan agreements where the creditor's only rights are against property of the debtor, and not against the debtor personally." H. R. Rep. No. 95–595, *supra,* at 315; accord, S. Rep. No. 95–989, *supra,* at 28. Insofar as the mortgage interest that passes through a Chapter 7 liquidation is enforceable only against the debtor's property, this interest has the same properties as a nonrecourse loan. It is true, as the Court of Appeals noted, that the debtor and creditor in such a case did not conceive of their credit agreement as a nonrecourse loan when they entered it. See 904 F. 2d, at 566. However, insofar as Congress did not expressly limit § 102(2) to nonrecourse loans but rather chose general language broad enough to encompass such obliga-

tions, we understand Congress' intent to be that § 102(2) extend to all interests having the relevant attributes of nonrecourse obligations regardless of how these interests come into existence.

The Bank resists this analysis. It contends that even if an obligation enforceable only against the debtor's property might normally be treated as a "claim" subject to inclusion in a Chapter 13 plan, such an obligation should not be deemed a claim against the debtor when it is merely the remainder of an obligation for which the debtor's personal liability has been discharged in a Chapter 7 liquidation. Serial filings under Chapter 7 and Chapter 13, respondent maintains, evade the limits that Congress intended to place on these remedies.

We disagree. Congress has expressly prohibited various forms of serial filings. See, *e. g.*, 11 U. S. C. § 109(g) (no filings within 180 days of dismissal); § 727(a)(8) (no Chapter 7 filing within six years of a Chapter 7 or Chapter 11 filing); § 727(a)(9) (limitation on Chapter 7 filing within six years of Chapter 12 or Chapter 13 filing). The absence of a like prohibition on serial filings of Chapter 7 and Chapter 13 petitions, combined with the evident care with which Congress fashioned these express prohibitions, convinces us that Congress did not intend categorically to foreclose the benefit of Chapter 13 reorganization to a debtor who previously has filed for Chapter 7 relief. Cf. *United States* v. *Smith*, 499 U. S. 160, 167 (1991) (expressly enumerated exceptions presumed to be exclusive).

The Bank's contention also fails to apprehend the significance of the full range of Code provisions designed to protect Chapter 13 creditors. A bankruptcy court is authorized to confirm a plan only if the court finds, *inter alia*, that "the plan has been proposed in good faith," § 1325(a)(3); that the plan assures unsecured creditors a recovery as adequate as "if the estate of the debtor were liquidated under chapter 7," § 1325(a)(4); that secured creditors either have "accepted the

plan," obtained the property securing their claims, or "retain[ed] the[ir] lien[s]" where "the value . . . of property to be distributed under the plan . . . is not less than the allowed amount of such claim[s]," § 1325(a)(5); and that "the debtor will be able to make all payments under the plan and to comply with the plan," § 1325(a)(6). In addition, the bankruptcy court retains its broad equitable power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Code.]" § 105(a). Any or all of these provisions may be implicated when a debtor files serially under Chapter 7 and Chapter 13. But given the availability of these provisions, and given Congress' intent that "claim" be construed broadly, we do not believe that Congress intended the bankruptcy courts to use the Code's definition of "claim" to police the Chapter 13 process for abuse.

## III

The Bank renews here its claim that the Bankruptcy Court erred in finding petitioner's plan to be in good faith for purposes of § 1325(a)(3) and feasible for purposes of § 1325(a)(6) of the Code. Because the District Court and Court of Appeals disposed of this case on the ground that the Bank's mortgage interest was not a "claim" subject to inclusion in a Chapter 13 plan, neither court addressed the issues of good faith or feasibility. We also decline to address these issues and instead leave them for consideration on remand.

The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*