United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 1, 2005**

Charles R. Fulbruge III
Clerk

In the
# United States Court of Appeals
## for the Fifth Circuit

———————

m 04-60799
Summary Calendar

———————

H. DEE JOHNSON, JR.; ET AL.,

Petitioners,

H. DEE JOHNSON, JR.,

Petitioner-Appellant,

VERSUS

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee.

————————————

Appeal from the United States Tax Court
m 10839-99

————————————

Before DAVIS, SMITH, and DENNIS,
Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

H. Dee Johnson, Jr., appeals a decision of the United States Tax Court, which upheld the Internal Revenue Service's findings of deficiencies in the tax reported on certain of his returns. Finding no error, we affirm.

## I.

On September 3, 1991, Johnson filed a petition under chapter 7 of the Bankruptcy Code.[1] Johnson's assets that were transferred to the estate included a $153,000 business debt payable to him. After becoming an asset of the estate, the debt became worthless, resulting in a new operating loss to the estate of $153,000. The estate also included two properties in, respectively, Argyle, Texas, and Dallas, Texas, that had been mortgaged to Citicorp Mortgage, Inc. ("CMI"); Johnson owed $262,128 on the Argyle property and $128,572 on the Dallas property.

CMI was granted relief from the bankruptcy stay to foreclose on its mortgages. It sold the Argyle property for $171,500, leaving an unrecovered deficiency of $90,628; it sold the Dallas property for $21,700, leaving an unrecovered deficiency of $106,872. CMI did not file proofs of claims against the estate for these unrecovered amounts.

On December 18, 1991, the bankruptcy court granted Johnson a discharge, releasing him from "all dischargeable debts," and enjoined all creditors whose debts were discharged by the order from "engaging in any acts to collect such debts as personal liabilities" of the taxpayer. On May 5, 1995, the bankruptcy court accepted the final report of the trustee, which reported that the total amount of debts allowed was $52,590 and that the net liquidation proceeds to be distributed for those claims was $47,674, which left $4,916 of the allowed debts discharged and unpaid.

Johnson deducted the $153,000 net operating loss of the estate from his income for tax years 1994 and 1995. The Commissioner disallowed the deductions, taking the position that Johnson was released from $197,500 of indebtedness to CMI, and although this amount was excluded from income under I.R.C. § 108(a), it still works, under § 108(b), to reduce to zero the net operating loss ("NOL") from, or carryovers to, the year of discharge. Johnson challenged this determination, arguing that the only debt discharged by the bankruptcy court was the $4,916 in unpaid allowed claims reported by the trustee and noted in the bankruptcy court's final decree.

## II.

Generally, where a taxpayer is released or discharged from the total amount of a debt, the difference is income for the discharge or cancellation of indebtedness (hereinafter "COD income"), which is included in gross income for tax purposes. I.R.C. § 61(a)(12). There is, however, an exception to this general rule where the discharge occurs in a bankruptcy proceeding: That COD income is *not* included in gross income. I.R.C. § 108(a)(1). Although such COD income is not included in gross income, it is still used to reduce certain tax attributes of the taxpayer, including, *inter alia*, net operating losses. I.R.C. § 108(b).

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Title 11, United States Code.

The parties do not dispute that Johnson assumed an NOL of $153,000 as a result of the transfer of the business debt to the bankruptcy estate. Where the parties part ways, however, is in the amount of COD income they believe was excluded from gross income under § 108(a) as a result of the bankruptcy proceeding, that offsets the claimed NOL. Johnson claims that the proper amount of COD income is $4,916 (the amount the bankruptcy court accepted in its final report as the total amount of debts left discharged), but the Commissioner contends that the proper amount also includes the $197,500 discharged to CMI through the mortgage foreclosures, totally eviscerating Johnson's claimed NOL. The Tax Court agreed with the Commissioner.

### III.

Johnson argues that the Tax Court erred, because he claims the plain language of § 108 requires the Tax Court to accept the findings of the bankruptcy court with respect to the amount of COD income that is exempted from gross income under § 108(a) and offsets his claimed NOL under § 108(b). In support, Johnson cites two subsections of § 108. First, he points to subsection (d)(2), which defines a "title 11 case" for purposes of § 108 as "a case under title 11 of the United States Code (relating to bankruptcy), but only if the taxpayer is under the jurisdiction of the court in such case and the *discharge of indebtedness is granted by the court or is pursuant to a plan approved by the court*" (emphasis added).

Johnson then quotes subsection (b)(3)(A), which provides that the §108(b) reduction of tax attributes "shall be one dollar for each dollar excluded by subsection (a)." Based on these subsections, Johnson believes that because the bankruptcy court's final order referenced a discharge of only $4,916 of debt, this was the only amount that could be excluded

from income under § 108(a) as a result of the definition set forth in subsection (d)(2), and is the maximum amount that could offset tax attributes under subsection (b)(1), because of the dollar-for-dollar rule established by subsection (b)(3).

Johnson's position is in error because, as the Tax Court astutely found, Johnson's reasoning is based on a misunderstanding of bankruptcy law. In exchange for transferring property to the estate, an eligible debtor receives a discharge from "*all debts* that arose before the date of the order for relief under this chapter." Bankr. Code § 727(b) (emphasis added). The CMI debts arose before the order for relief was granted in this case, and were discharged by it, even if not specifically referenced in the bankruptcy court's final order.

The final order issued by the district court only referenced the $4,916 in discharged debt, because CMI did not file a proof of claim on the mortgage debts. CMI had liens on the Dallas and Argyle properties and was not required to file a proof of claim to protect its liens.[2] Although a creditor that fails to file a proof of claim is not entitled to receive distribution from the estate, it may still enforce its security interests in estate property on which it has liens, as CMI did by foreclosing on the mortgages.[3] CMI forfeited the right to seek recourse against Johnson personally for the

---

[2] *See* Bankr. Code § 506(a), (d); *see Simmons v. Savell (In re Simmons)*, 765 F.2d 547, 551 (5th Cir. 1985) (stating that "no creditor is required to file a proof of claim").

[3] *See Johnson v. Home State Bank*, 501 U.S. 78, 82 (1991) (stating that bankruptcy discharge affects only personal liability of debtor, not *in rem* action against property).

outstanding debt after the foreclosure sales by not filing a proof of claim in the required period, so that debt was discharged as a result of the grant of relief, regardless of whether that fact was mentioned in the bankruptcy court's final report.[4]

## IV.

In summary, the Tax Court's and bankruptcy court's findings are not in tensionSSthe bankruptcy court found that $4,916 in debt was discharged as to creditors that filed proofs of claim against the estate, and the Tax Court made the additional finding that the CMI debts were also discharged as a result of the bankruptcy court's order, although they were not specifically mentioned in the final order of relief. The Tax Court appropriately found that the CMI debts were discharged *as a result* of the grant of relief from the bankruptcy court under Bankr. Code § 727(b), so they plainly fell within the definition of discharged debt in "a title 11 case" as defined by I.R.C. § 108-(d)(2), and thus were appropriately excludable under § 108(a) and applicable to offset Johnson's NOL under § 108(b)(2).[5]

---

[4] *See* Bankr. Code § 727(b) ("Except as provided in section 523 of this title, a discharge under section (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter, and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case, *whether or not a proof of claim based on any such liability is filed . . .* ) (emphasis added); *see also In re Tall*, 79 B.R. 291, 294 (Bankr. S.D. Ohio 1987) (finding that pursuant to Bankr. Code § 727(b), creditor's failure to file proof of claim did not prevent discharge of debtor's obligation).

[5] Because we conclude that the findings of the
(continued...)

AFFIRMED.

---

[5](...continued)
tax court are consistent with those of the bankruptcy court, Johnson's *res judicata* and collateral estoppel arguments are also without merit.