**133 Nev., Advance Opinion 62**

# IN THE SUPREME COURT OF THE STATE OF NEVADA

PROPERTY PLUS INVESTMENTS, LLC, A NEVADA LIMITED LIABILITY COMPANY,
Appellant,
vs.
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AN ILLINOIS CORPORATION; AND CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT AS TRUSTEE OF ARLP TRUST 3, IN C/O ALTISOURCE ASSET MANAGEMENT CORPORATION,
Respondents.

No. 69072

FILED

SEP 14 2017



ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order granting summary judgment in a quiet title action involving HOA superpriority liens. Eighth Judicial District Court, Clark County; Linda Marie Bell, Judge.

*Reversed and remanded.*

Kim Gilbert Ebron and Jacqueline A. Gilbert and Diana Cline Ebron, Las Vegas; Kang & Associates, PLLC, and Patrick W. Kang and Erica D. Loyd, Las Vegas,
for Appellant.

Wright, Finlay & Zak, LLP, and Dana Jonathon Nitz, Edgar C. Smith, and Christopher A.J. Swift, Las Vegas,
for Respondents.

17-31073

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, GIBBONS, J.:

In this appeal from a district court summary judgment in a quiet title action involving superpriority liens, we hold that an HOA is not limited to only one superpriority lien under NRS 116.3116 per parcel of property forever. Rather, when an HOA rescinds a superpriority lien on a property, the HOA may subsequently assert a separate superpriority lien on the same property based on monthly assessments, and any maintenance and nuisance abatement charges, accruing after the rescission of the previous superpriority lien. Additionally, we conclude that an HOA lien survives bankruptcy even though the homeowner's personal obligation is extinguished upon a Chapter 7 discharge. Accordingly, we reverse the district court's order granting summary judgment and remand this matter for further proceedings because factual issues remain with respect to whether the HOA's second lien included monthly assessments that accrued after the rescission of its first lien.

*FACTS AND PROCEDURAL HISTORY*

This case arises from conflicting claimed interests in the real property located at 8787 Tom Noon Avenue, No. 101, Las Vegas, Nevada (Tom Noon property).[1] The Tom Noon property is subject to the covenants, conditions, and restrictions (CC&Rs) of, among others, High Noon at Arlington Ranch Homeowners Association (High Noon), which

_____

[1]While the district court's order lists the address as unit number 21, the lien and associated documentation in the record indicate the correct address is unit number 101.

 

were recorded on March 25, 2004. Megan Sulliban purchased the property on April 27, 2007. To finance the purchase, Sulliban borrowed from Bank of America $215,000, repayment of which was secured by a deed of trust recorded on April 30, 2007. Although Bank of America remained the loan servicer, on April 7, 2014, the deed of trust was assigned to Christiana Trust, respondent in this matter along with Mortgage Electronic Registration Systems, Inc.

*The 2010 lien*

On April 8, 2010, High Noon recorded a notice of lien for unpaid assessments (the 2010 lien). On July 1, 2010, High Noon recorded a default for its lien.

Bank of America hired counsel, Miles, Bergstrom & Winters, LLP (MBW), to negotiate with High Noon's counsel, Alessi & Koenig, LLC (AK), to protect the deed of trust. Seeking to satisfy the superpriority amount of the 2010 lien, around August 16, 2010, MBW sent to AK a letter requesting the amount of the superpriority portion of the 2010 lien. Based on the statement of account it received from AK in response to its inquiry, on September 23, 2010, MBW sent to AK a $522 check intended to satisfy the maximum nine months of $58 common assessments. In an accompanying letter, MBW indicated that High Noon's accepting the check would constitute payment in full. The payment was ultimately rejected, and around October 30, 2010, Bank of America received the returned check. AK provided no correspondence with the returned check, although AK had sent a letter to MBW, dated September 8, 2010, indicating that AK could not accept partial payment as payment in full based on a district court case it interpreted to allow for an HOA's lien to include collection costs.

On August 25, 2010, Sulliban entered into a payment plan agreement with AK. On June 22, 2011, AK informed Sulliban that she defaulted under that agreement and at that time owed $412.78 for a past-due balance. AK later received a $459.76 check from Sulliban on July 21, 2011, although that payment is not accounted for on High Noon's statement for Sulliban's account. High Noon released the 2010 lien on August 11, 2011.

*The 2012 lien*

On July 20, 2012, High Noon recorded a second notice of lien for unpaid assessments (the 2012 lien). On October 31, 2012, High Noon recorded a default for its lien.

On December 19, 2012, Sulliban filed for Chapter 7 bankruptcy. Sulliban listed High Noon as a creditor holding a secured claim of $1,877.01. This amount reflected the amount listed as unpaid debt on the notice of lien for the 2012 lien, although the notice of default for the same identified the unpaid debt as $3,190.45. On March 20, 2013, Sulliban received a discharge.

On June 21, 2013, High Noon recorded a notice of trustee's sale foreclosing on its 2012 lien. The notice listed Sulliban's unpaid debt as $5,019.80, which included assessments, fees, and costs that accrued prior to her bankruptcy.

On July 17, 2013, appellant Property Plus Investments, LLC, purchased the property at a nonjudicial foreclosure sale for $7,500. The deed was subsequently recorded and listed $5,979.89 as the amount of unpaid debt and costs.

Property Plus brought a quiet title action. Respondents eventually filed a motion for summary judgment, arguing in part that High Noon's sale did not extinguish the deed of trust because High Noon

had rejected Bank of America's 2010 tender and because the 2012 lien had been extinguished by virtue of Sulliban's bankruptcy discharge. The district court granted respondents' summary judgment motion "for two reasons: (1) the homeowners' association lien foreclosed on in this case lost its super-priority portion when the HOA and/or foreclosure agent refused the bank's tender of payment, and (2) the HOA lien was discharged by the United States Bankruptcy Court prior to foreclosure." After the district court denied its motion for reconsideration, Property Plus filed the instant appeal.

## DISCUSSION

Property Plus challenges the district court's order granting summary judgment, which this court reviews de novo. *See Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). Summary judgment is proper if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Id.* All evidence must be viewed in a light most favorable to the nonmoving party. *Id.*

*The district court erred insofar as it concluded that High Noon was limited to only one superpriority lien per parcel of property*

Property Plus first argues the district court erred in concluding that a tender in satisfaction of the 2010 lien would strip the 2012 lien of its superpriority piece. We agree.

NRS 116.3116 is the HOA lien statute. *SFR Invs. Pool 1, LLC v. U.S. Bank, N.A.*, 130 Nev., Adv. Op. 75, 334 P.3d 408, 410 (2014); *see also* Thomas W. Stewart & Jenn Odell, *2015 Legislative Recap: Important Bills from Nevada's 78th Legislative Session*, 16 Nev. L.J. 419, 436-38 (2015) (explaining the 2015 amendments to NRS Chapter 116). "NRS 116.3116(2) . . . splits an HOA lien into two pieces, a superpriority piece and a subpriority piece." *SFR Invs. Pool 1*, 130 Nev., Adv. Op. 75, 334

P.3d at 411. The superpriority piece is limited to "the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges," whereas the subpriority piece "consist[s] of all other HOA fees or assessments." *Id.* The superpriority piece is prior to a first deed of trust, and the subpriority piece is subordinate to the same. *Id.* Thus, proper foreclosure of a superpriority lien under NRS Chapter 116 will extinguish a first deed of trust. *Id.* at 419.

This court has not addressed whether an HOA is limited to only one superpriority lien under NRS 116.3116 per parcel of property forever, but Nevada's federal court has. In *JPMorgan Chase Bank, N.A. v. SFR Investments Pool 1, LLC*, for example, the United States District Court for the District of Nevada considered whether "an HOA is precluded from bringing multiple enforcement actions to enforce entirely separate liens (with superpriority portions) for unpaid assessments against the same parcel of property." 200 F. Supp. 3d 1141, 1167 (D. Nev. 2016). Analogous to the instant case, the plaintiff bank and holder of a first deed of trust in *JPMorgan* argued that its payment to the HOA on one lien "forever discharged the superpriority lien" such that the enforcement of an entirely separate lien constituted an impermissible "attempt to resuscitate [the first lien] by successive enforcement action." *Id.* For support, the plaintiff cited "to a report from the Joint Editorial Board for Uniform Real Property Acts (JEB), an arm of the Uniform Law Commission," *id.*, which clarifies that section 3-116(c) of the Uniform Common Interest Ownership Act of 1982 (UCIOA) "does not (and was not intended to) authorize an association to file successive lien enforcement actions every six months as

a means to extend the association's limited lien priority,"[2] Joint Editorial Bd. for Unif. Real Prop. Acts, *The Six-Month "Limited Priority Lien" for Association Fees Under the Uniform Common Interest Ownership Act*, 12 (June 1, 2013).

Like the respondents in the instant case, the plaintiff in *JPMorgan* specifically relied upon the report's fourth example, which indicates that "[s]ection 3-116(c) provides an association with first lien priority only to the extent of the six months of unpaid common expense assessments that accrued immediately preceding a lien foreclosure action by either the association or the first mortgagee." JEB Report, *supra*, at 14; *see also JPMorgan*, 200 F. Supp. 3d at 1167-68. However, the U.S. District Court determined that example four was factually distinct:

> [I]n the JEB Report example and the *Lake Ridge* case [cited therein], the association was attempting to enforce the superpriority portion of its lien multiple times during the pendency of the same bank foreclosure action. Here, [plaintiff] had no foreclosure action pending during either period of time when the HOA attempted to foreclose on its lien for assessments. Moreover, the policy rationale for preventing the association from repeatedly asserting the superpriority portion of its lien while the same bank foreclosure action is pending—namely, that allowing such successive liens would deter banks from ever paying off the original lien so as not to create another superpriority lien—does not apply with the same

---

[2]NRS 116.3116 "is a creature of the [UCIOA], § 3-116." *SFR Invs. Pool 1*, 130 Nev., Adv. Op. 75, 334 P.3d at 410. However, among other exceptions not relevant here, "UCIOA § 3-116 differs from NRS 116.3116(1) in that it limits the superpriority to six rather than nine months of unpaid dues." *Id.* at 411 n.1.

force in a case where, as here, the bank never attempted to foreclose.

*Id.* at 1168 (internal footnote and citations omitted). Rather, the U.S. District Court determined that example five was the most instructive:

> This case is more comparable to the JEB Report's fifth example, in which the bank paid the association an amount equal to the superpriority portion of its lien and the association subsequently commenced an action to enforce its lien for later-accrued unpaid assessments. In that example, the JEB concluded that the first payment would not preclude the association from asserting the superpriority portion of its lien for the subsequent unpaid assessments.

*Id.* at 1168 n.8. Thus, the U.S. District Court rejected the plaintiff's arguments and ultimately concluded that the superpriority piece of an HOA lien is not "a one-shot offer that, once discharged, can never be asserted again." *Id.* at 1168.

We agree with the analysis set forth in *JPMorgan* and conclude that NRS 116.3116 does not limit an HOA to one lien enforcement action or one superpriority lien per property forever. To hold otherwise "would be contrary to the purposes of Nevada's HOA lien statute, one of which is to encourage the collection of needed HOA funds and avoid adverse impacts on other residents." *Id.* (citing *SFR Invs. Pool 1*, 130 Nev., Adv. Op. 75, 334 P.3d at 417). Therefore, when an HOA rescinds a superpriority lien on a property, the HOA may subsequently assert a separate superpriority lien on the same property based on monthly HOA dues, and any maintenance and nuisance abatement charges, accruing after the rescission of the previous superpriority lien.

In the instant case, the district court focused on Bank of America's tender with respect to the 2010 lien, ultimately concluding that

"the homeowners' association lien foreclosed on in this case lost its super-priority portion when the HOA and/or foreclosure agent refused the bank's tender of payment." However, whether Bank of America tendered payment in satisfaction of the superpriority piece of the 2010 lien is immaterial because High Noon eventually released that lien in August 2011. Instead, the district court should have considered whether High Noon's 2012 lien contained a superpriority piece for the unpaid assessments that accrued in the months preceding the notice of lien recorded on July 20, 2012, but following the release of the 2010 lien.

Upon reviewing the record, we conclude that a genuine issue of material fact exists regarding whether the 2012 lien included unpaid assessments that became due during the months before institution of the action to enforce the lien, but accrued after the rescission of the 2010 lien. An HOA cannot simply reject payment and release the lien, only to turn around and record another lien based on the same unpaid assessments in order to safeguard the superpriority status. Accordingly, while High Noon must not be precluded from bringing more than one action to enforce entirely separate superpriority liens against the same parcel of property, remand is necessary to further develop the record.

*The district court erred in holding that High Noon could not lawfully foreclose on a lien that contained costs and fees that were discharged by Sulliban's bankruptcy*

Property Plus next argues that the district court erred in concluding the 2012 lien violated Sulliban's bankruptcy discharge. We agree.

A Chapter 7 discharge "extinguishes *only* 'the personal liability of the debtor.'" *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991) (quoting 11 U.S.C. § 524(a)(1)). Accordingly, while Sulliban's

Supreme Court
OF
Nevada

(O) 1947A

9

personal liability on the 2012 lien was extinguished under 11 U.S.C. § 523(a)(16) (providing that HOA fees and assessments are dischargeable if the debt arose "before entry of the order for relief in a pending or subsequent bankruptcy case"), the 2012 lien survived. *See Farrey v. Sanderfoot*, 500 U.S. 291, 297 (1991) ("Ordinarily, liens and other secured interests survive bankruptcy."); *Johnson*, 501 U.S. at 84 ("[A] bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another— namely, an action against the debtor *in rem*."). As such, we conclude that the district court erred, as a matter of law, in holding that High Noon could not lawfully foreclose on the 2012 lien due to Sulliban's bankruptcy discharge.

## *CONCLUSION*

Accordingly, for the reasons set forth above, we reverse the district court's order granting summary judgment and remand this matter for further proceedings because factual issues remain with respect to

SUPREME COURT
OF
NEVADA

(O) 1947A

10

whether the HOA's 2012 lien included monthly assessments that accrued after the rescission of the HOA's 2010 lien.

_____, J.
Gibbons

We concur:

_____, C.J.
Cherry

_____, J.
Pickering

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Hardesty

_____, J.
Stiglich