[Cite as *Zumbrink v. Beam*, 2019-Ohio-2347.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
DARKE COUNTY**

|  |  |  |
|---|---|---|
| | : | |
| | : | |
| | : | |
| SCOTT ZUMBRINK, DARKE COUNTY TREASURER | : | Appellate Case No. 2019-CA-1 |
| | : | |
| | : | Trial Court Case No. 2017-CV-21 |
| Plaintiff-Appellee | : | |
| | : | (Civil Appeal from |
| v. | : |  Common Pleas Court) |
| | : | |
| BRUCE BEAM, et al. | : | |
| | | |
| Defendant-Appellant | | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 14th day of June, 2019.

. . . . . . . . . .

MARGARET B. HAYES, Atty. Reg. No. 0093662, Darke County Prosecutor's Office, Darke County Courthouse, 3rd Floor, 504 South Broadway, Greenville, Ohio 45331
        Attorney for Plaintiff-Appellee

RANDALL E. BREADEN, Atty. Reg. No. 0011453, 414 South Walnut Street, Greenville, Ohio 45331
        Attorney for Defendants-Appellants

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} Bruce and Carol Beam appeal from a judgment of the Darke County Court of Common Pleas, which ordered, under the doctrine of cy pres, that the remaining proceeds from the sale of the Beams' foreclosed property be distributed to the Darke County Foundation, Inc., with net earnings to be used to provide legal services for indigent persons in Darke County. For the following reasons, the trial court's judgment will be reversed and the case remanded for further proceedings.

**I. Factual and Procedural History**

{¶ 2} In January 2018, the Darke County Treasurer filed a complaint for foreclosure against the Beams (the homeowners) and Associates Home Equity Services, Inc. (the mortgagee by assignment), due to the Beams' alleged failure to pay real estate taxes, assessments, charges, and penalties on their real property. All named parties were served with the complaint. In their answer, the Beams stated that they were granted a discharge in bankruptcy in January 2013 regarding the amounts alleged in the complaint. The Beams attached a copy of the order of the bankruptcy court granting a discharge. Associates Home Equity Services did not respond to the complaint.

{¶ 3} The Darke County Treasurer subsequently sought summary and default judgment on the claim. The trial court granted the motion and, three days later, issued a judgment and decree of foreclosure. The court found that the Darke County Treasurer was owed $2,967.07 for real estate taxes and assessments, and it ordered the property sold. The judgment stated that the proceeds of the sale would be paid in the following order of priority: (1) to the clerk of courts for costs of the action, (2) to the Darke County Treasurer for taxes and assessments, and (3) to the Sheriff to await further orders of the

court.

{¶ 4} The property sold for $31,000. In its confirmation of sale, the court ordered a total of $5,146.15 to be distributed to the clerk of courts, sheriff, treasurer, recorder, and auditor for the unpaid real estate taxes and expenses and for expenses related to the action and the sale. The court ordered that the remaining $25,853.85 be held by the clerk of courts pending further order by the court.

{¶ 5} Approximately two months later, the Darke County Treasurer filed a "motion to vacate sale," because First Union National Bank of Delaware, the original mortgagee, had not been named in the complaint. The Darke County Treasurer indicated that First Union should have been named as a party due to an issue regarding the assignment of mortgage. The Darke County Treasurer asked the trial court to vacate the sale, return the deposit to the buyer, and allow the Treasurer to file an amended complaint. The Treasurer did not expressly ask the trial court to vacate the judgment and decree of foreclosure, which was a separate final appealable order, although such a request was, perhaps, implicit in the motion to vacate sale.

{¶ 6} The record does not contain a ruling on the motion to vacate sale. Nevertheless, on October 26, 2017, the Darke County Treasurer filed an amended complaint, adding First Union. The parties-defendants again were served by certified mail; neither First Union nor Associates Home Equity Services responded to the amended complaint. After the time for answering had expired, the Darke County Treasurer apparently asked the trial court to enter judgment and confirm the prior sale.[1]

---

[1] No motion is in the record, but the trial court's amended judgment entry states that "[t]his cause came to be heard upon the Motion of Plaintiff and upon return of the Sheriff of the sale made under this Court's prior Order of Sale dated April 20, 2017."

{¶ 7} On April 4, 2018, the trial court issued an amended judgment entry and confirmed the prior sale. After the distribution of some of the proceeds to designated county agencies, $24,457.81 was to be held by the clerk of courts pending further order of the court. On August 15, 2018, the court, sua sponte, filed a second amended judgment entry, correcting the amount of costs due to the clerk of courts and the amount of real estate taxes and assessments due to the Darke County Treasurer; the remaining sum was amended to $24,699.28.

{¶ 8} On October 10, 2018, the trial court filed an entry notifying the parties and the Chapter 7 bankruptcy trustee of its intent to "distribute the net sale proceeds, less any further costs, among interested parties or to apply the *cy pres* doctrine."[2] The court invited the parties to file "objections, demands and/or responses" by November 1, 2018. The court indicated that it would then issue "such orders of distribution as it determines just."

{¶ 9} In response, the Beams filed an application seeking the distribution of all of the remaining proceeds to them. They argued that (1) their mortgage indebtedness was discharged in bankruptcy, (2) they had claimed a homestead exemption in the sum of $43,250 on the real property at issue, (3) they would receive the entire net proceeds by virtue of their homestead exemption even if the bankruptcy case were reopened, (4) the bank failed to file a response in the foreclosure action and thus waived any claim to the

---

[2] The entry indicates that it was hand-delivered to counsel for the Darke County Treasurer, emailed to counsel for the Beams, and mailed to CT Corporation Systems as agent for Associates Home Equity Services, Inc., to Prentice-Hall Corporation System as agent for First Union Bank of Delaware, to First Union Bank of Delaware care of Orion Financial Group (POA), and to David Mikel, the Chapter 7 bankruptcy trustee.

net proceeds, and (5) they were the title owners of the foreclosed property prior to the sale and therefore are the rightful owners of any net sale proceeds remaining. The Beams supported their application with bankruptcy court records reflecting the property for which they claimed an exemption and the order of discharge. The Beams' response was served on all who had received the court's notice.

{¶ 10} Neither the bankruptcy trustee nor any other party responded to the court's notice.

{¶ 11} On December 21, 2018, the trial court ordered the proceeds to be paid to the clerk of courts in the amount of any remaining court costs and the balance distributed to the Darke County Foundation, Inc., with the proceeds to be held in trust in perpetuity, with net earnings to be distributed to an appropriate legal aid society or similar legal services entity. The court reasoned:

The Court finds that all liens have been paid; that the former owners received a discharge of their mortgage indebtedness in 2013 by way of a Chapter 7 bankruptcy; and that lienholders abandoned or did not assert any claims due to the bankruptcy discharge. Further, it appears inequitable for the former owners to receive the benefit of both (1) a discharge of their indebtedness from the bankruptcy; (2) cost-free housing for numerous years; and (3) the equity in the real estate which did not exist before their mortgage discharge was granted.

The *cy pres* doctrine evolved as a solution for courts to correct inequities which were caused by the passage of time and where other appropriate uses for funds exist. As demonstrated by the attached, based

on the Court's notice of its daily docket management, and based on its knowledge of services provided by the Miami Valley Volunteer Lawyer Project, the Court finds that other laudable uses exist which can be served by the funds being held by the Clerk, especially as such needs relate to representation of indigent persons in this community. * * *

Attached to the court's entry was an information sheet prepared by the Ohio Legal Assistance Foundation, entitled "Cy Pres: How the Courts Can Help Legal Aid." The document provided statistical information about the types of legal aid cases, the number of Ohioans eligible for legal aid, funding for legal aid, and people helped by legal aid. The document encouraged directing residual funds from class action lawsuits to civil legal aid organizations.

{¶ 12} The Beams appeal from the trial court's judgment.

## II. Court's Distribution of the Sale Proceeds

{¶ 13} In their sole assignment of error, the Beams claim that the "trial court erred to the prejudice of Appellants by using the doctrine of *cy pres* to pay over to the Darke County Foundation, Inc. the residual tax foreclosure sale proceeds when such charitable foundation is not entitled to the same as a matter of law or equity."

{¶ 14} Foreclosure proceedings are governed by equity and statute. *Wells Fargo Bank, N.A. v. Young*, 2d Dist. Darke No. 2009 CA 12, 2011-Ohio-122, ¶ 29.

It is well-recognized that actions in foreclosure arise in equity. *See Kerr [v. Lydecker*, 51 Ohio St. 240, 248, 37 N.E. 267 (1894)]; [*Union Trust Co. v.*] *Lessovitz*, [122 Ohio St. 406, 171 N.E. 849 (1930)] (concluding that the right of subrogation and priority of liens were chancery issues for purposes of

Section 6, Article IV, of the Ohio Constitution of 1912). Moreover, civil actions that were recognized as equitable actions before the adoption of the Code of Civil Procedure remained equitable in nature after the General Assembly enacted statutes providing an equitable remedy. *See Wagner v. Armstrong* (1916), 93 Ohio St. 443, 113 N.E. 397 (holding that statutory claim for partition was appealable as chancery case).

*Young* at ¶ 40. Nevertheless, the trial court must comply with the statutory requirements, as set forth by the Ohio legislature, for conducting foreclosure proceedings. *See id.* at ¶ 45 ("The result of the legislative action was to recognize one foreclosure method under equity and statute — foreclosure with judicial sale of the mortgaged property.")

{¶ 15} R.C. Chapter 5721 addresses foreclosure proceedings due to tax delinquency. R.C. 5721.19(D) sets forth the order of distribution of the proceeds of the sale upon confirmation of a sale by a court. R.C. 5721.20 further indicates that any residue of money from the sale belongs to the owner of the property at the time of foreclosure, and it provides a procedure if the money is unclaimed. It states:

> * * * [A]ny residue of moneys from the sale or foreclosure of lands remaining to the owner on the order of distribution, and unclaimed by such owner within sixty days from its receipt, shall be paid into the county treasury and shall be charged separately to the county treasurer by the county auditor, in the name of the supposed owner. The treasurer shall retain such excess in the treasury for the proper owner of such lands upon which the foreclosure was had, and upon demand by such owner, within three years from the date of receipt, shall pay such excess to the owner. If the owner

does not demand payment of the excess within three years, then the excess shall be forfeited to the delinquent tax and assessment collection fund created under section 323.261 [sic] of the Revised Code, or in counties that have established a county land reutilization corporation fund under section 323.263 [sic] of the Revised Code, to the county land reutilization corporation fund.

R.C. 5721.20. We find no authority that allows the trial court to depart from this statutory procedure and to rely on equitable principles to distribute the proceeds of the tax foreclosure sale.

{¶ 16} We further find no basis for the trial court's application of the doctrine of cy pres, in particular, in this case. The doctrine of cy pres is an equitable doctrine stemming from trusts and estates law. *E.g., In re Polyurethan Foam Antitrust Litigation*, 178 F.Supp.3d 621, 622-623 (N.D.Ohio 2016). "In the law of trusts it refers to a rule of construction used by courts of equity to effectuate the intention of a charitable donor 'as near as may be' when it has become impossible or impractical by reason of changing conditions or circumstances to give literal effect to the donor's intention." *Cheney v. State Council of Ohio Junior Order United Am. Mechanics* 1959, 11 O.O.2d 112, 162 N.E.2d 242, 244 (P.C.1959); *see also, e.g., Daloia v. Franciscan Health Sys. of Cent. Ohio, Inc.*, 79 Ohio St.3d 98, 679 N.E.2d 1084 (1997).

{¶ 17} In addition to its role in trust and estate law, the doctrine has been extended to class action suits in which the distribution to the class is not feasible. *In re Polyurethan Foam Antitrust Litigation* at 623. "Rather than see money escheat to the state or revert to the defendant, cy pres distributes unclaimed funds to a third-party charity." *Id.*

Despite this extension, the applicability of the doctrine of cy pres remains quite limited. We have found no authority – and the parties do not direct us to any – that expands the use of the cy pres doctrine to other contexts.

{¶ 18} Finally, any "inequity" that benefits the Beams was due to the inaction of other interested parties, not the actions of the Beams. According to the preliminary certificate of title attached to the complaint, in January 2001, the Beams borrowed $70,300 from First Union Bank of Delaware, which was secured by a mortgage on the Beams' real property. On August 30, 2001, First Union, through Orion Financial Group, executed an assignment of mortgage to Associates Home Equity Services. The Beams' documentation indicated that they filed a Chapter 7 bankruptcy action in September 2012. During the bankruptcy proceeding, the Beams stated that their real property was worth $62,580, and they claimed a homestead exemption of $43,250; the home was not sold during the bankruptcy proceeding. The Beams were granted a discharge in bankruptcy on January 14, 2013.

{¶ 19} It is well established that, when a bankruptcy court discharges the debtor's personal liability on a note in a Chapter 7 bankruptcy proceeding, the discharge does not extinguish the mortgage interest in the property. *E.g., Johnson v. Home State Bank*, 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991); *Deutsche Bank Natl. Trust Co. v. Holden*, 147 Ohio St.3d 85, 2016-Ohio-4603, 60 N.E.3d 1243, ¶ 26 (mortgage interest survives the discharge in a Chapter 7 bankruptcy of the underlying debt that the mortgage secures). As stated by the *Johnson* court:

A mortgage is an interest in real property that secures a creditor's right to repayment. But unless the debtor and creditor have provided otherwise,

the creditor ordinarily is not limited to foreclosure on the mortgaged property should the debtor default on his obligation; rather, the creditor may in addition sue to establish the debtor's in personam liability for any deficiency on the debt and may enforce any judgment against the debtor's assets generally. A defaulting debtor can protect himself from personal liability by obtaining a discharge in a Chapter 7 liquidation. However, such a discharge extinguishes only "the personal liability of the debtor." Codifying the rule of *Long v. Bullard*, 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886), the Code provides that a creditor's right to foreclose on the mortgage survives or passes through the bankruptcy.

(Citations omitted.) *Johnson* at 82-83. *See also Holden* at ¶ 33 (bank had standing to pursue foreclosure in rem where bankruptcy court relieved debtor's obligation on the note, but bank stated that it was seeking only to enforce its security interest against the property.)

{¶ 20} According to the record before us, First Union was the original mortgagee, and it either assigned or attempted to assign its mortgage to Associates Home Equity Services.[3] The record shows that the foreclosure complaint was sent by certified mail to the statutory agents of both companies (CT Corporation System as statutory agent for Associates Home Equity Services, and Prentice-Hall Corporation as statutory agent for First Union) and to First Union care of Orion Financial Group (its alleged attorney in fact at the time of the assignment); the certified mail receipts were returned signed. Neither

---

[3] Whether First Union properly assigned the mortgage to Associates Home Equity Services is not before us and is not relevant to this appeal.

Associates Home Equity Services nor First Union Bank of Delaware filed an answer or otherwise responded to the complaint or subsequent confirmation entry, and neither company claimed any interest in the Beams' property. If the Beams had defaulted on their mortgage obligation prior to this tax foreclosure action, the mortgagee could have pursued an in rem foreclosure action against the Beams' property; it did not. Nor did Associates Home Equity Services or First Union participate in this tax foreclosure action.

{¶ 21} Finally, we note that the Chapter 7 bankruptcy trustee was served with the court's notice and the Beams' response, which requested the return of the remaining proceeds to them. The bankruptcy trustee also did not respond to the court's notice or otherwise express an interest in the proceeds from the tax foreclosure sale.

{¶ 22} Accordingly, we find no authority or basis to apply equitable principles to bypass the Revised Code's procedures regarding foreclosures due to tax delinquencies.

{¶ 23} The Beams' assignment of error is sustained.

### III. Conclusion

{¶ 24} The trial court's judgment will be reversed, and the matter will be remanded for further proceedings.

. . . . . . . . . . . . .

HALL, J., concurs in judgment and writes separately:

{¶ 25} I agree that the trial court could not apply the *cy pres* doctrine to distribute the residue of proceeds from the sale of real estate in this property tax foreclosure case. There is no authority for doing so. In my opinion, that is the holding of our decision. I believe the remainder of the majority opinion, and of this concurring opinion, is dicta.

{¶ 26} I write separately, however, to indicate that on this record I disagree with a

notion in ¶ 15 of the majority opinion that R.C. 5721.20 requires the residue from the sale to be paid to the owner (the Beams). In that regard, the Beams filed a "no asset" bankruptcy petition in 2012. (Doc. #34) Apparently the bankruptcy trustee, believing the real property was mortgaged and the Beams had no equity in the property, abandoned the property and did not require its sale to satisfy unsecured creditors. According to the County Treasurer's brief, the Beams also abandoned the property, and it was vacant for five years. In my opinion, the foreclosure action was strictly *in rem*, the Beams were parties only because they were the titled owners, not because they had an equitable interest and not because they had any enforceable personal obligation related to the property.

{¶ 27} I also disagree with the comment in ¶ 18 that any "inequity" noted by the trial court was due to "inaction of other interested parties." In my opinion, it is as likely as not that the proper "other parties" were not adequately served or notified of the proceeding. Publically available online governmental records reveal that First National Bank of Delaware no longer exists. That institution changed its name to Wachovia Bank of Delaware, National Association, in January 2002, about one year after the Beams' mortgage. In 2010, that surviving institution was acquired by and merged into Wells Fargo Bank, National Association. That is probably why the initial attempted certified mail service to First Union at 920 King St., Wilmington, Delaware 19801 was "not deliverable as addressed unable to forward." (Doc. #30). Additionally, that is probably why our court of appeals docket contains a returned clerk's office envelope, postmarked January 14, 2019, probably for sending the App.R. 11(B) notice filed at about that time, addressed to First Union National Bank of Delaware in Wilmington, Delaware, which was stamped

"return to sender attempted not known unable to forward." On the envelope, someone unknown crossed out the First Union name and address and wrote "Wells Fargo Bank 100 W 10th St. Wilmington DE 19801."

{¶ 28} Moreover, the purported certified mail services in this case to support the inclusion of First Union Bank of Delaware are two October 2017 signed return receipts, one to First Union National Bank "C/O Orion Financial Group, Inc." in Southlake, Texas (Doc. #29) and the other to Prentice Hall Corporation "Registered Agent for First Unio" (sic) in Wilmington, Delaware.   Presumably Orion was included because the Preliminary Certificate of Title attached to the complaint (Doc. #1) indicated that Orion, purportedly as attorney in fact for First Union, assigned the First Union mortgage to Associates Home Equity Services, Inc., but there is no power of attorney of record to verify its authority. So whether or not Orion was or still is an agent of First Union, or its successors, is unknown. There is also nothing in the record to indicate why or how Prentice Hall was named as a "registered agent." Either way, suffice it to say that either of those companies receiving mail in 2017 for "First Union Bank of Delaware," a company that at that time had not existed for 15 years, might not reasonably be expected to promptly get that mail to a proper party.

{¶ 29} Assuming that Associates Home Equity, Inc. is actually the interested assignee of the mortgage, there is a similar question about service of process. The original certified mailing to "Associates Home Equity Services, Inc.", to an address in Irving, Texas, was returned "attempted not known unable to forward." (Doc. #10). Publically available online government records indicate Associates Home Equity Services, Inc. was a mortgage service company which merged with and into "Citifinancial

Mortgage Company, Inc." in January 2002. "Citifinancial Mortgage Company, Inc." then merged in 2006 with and into "Citimortgage, Inc.," the surviving company. The record in this case indicates Associates Home Equity Services, non-existent since 2002, was served by a certified mail to "CT Corporation System, Agent fo[r] Associates Home Equity Services" at an address in Columbus, Ohio. The record does not indicate what information was relied upon for mailing to CT Corporation. In addition, in our court of appeals docket is a returned clerk's office envelope postmarked January 16, 2019, probably for sending the App.R. 11(B) notice filed at about the same time, addressed to "Associates Home Equity Services, Inc." in Irving, Texas, which is stamped "return to sender attempted not known unable to forward." In the absence of information about whether CT Corporation is still, or ever was, a service agent for Associates Home Equity Services, Inc., I question whether that company, receiving mail in 2017 for Associates Home Equity Services, a company that at that time had not existed for 15 years, could reasonably be expected to promptly get that mail to a proper party.

{¶ 30} Indeed the actual holder of a mortgage could and should take steps to protect its interest by recording appropriate assignments or otherwise documenting a successor organization. And perhaps the surviving companies here did actually receive notice of the proceedings and elected not to participate. But it is more than curious to me that, although the Beams have submitted some documentation of their September 7, 2012 Chapter 7 Bankruptcy Petition and their October 14, 2013 discharge papers, they have not submitted their matrix of creditors which would include to whom they were paying, or not paying, their mortgage in 2012. If their bankruptcy listed a creditor related to the mortgage as anyone other than First Union National Bank of Delaware or

Associates Home Equity Services, Inc., then in my opinion they have improperly taken advantage of the fact that the proper interested parties have not been named or served. Again, perhaps the Beams did properly discharge a debt by naming one or both of those parties. But I suspect that from 2002, when both companies changed names, until 2012, when they filed bankruptcy, the Beams' mortgage payments were not sent to entities that no longer existed. In that respect, I believe the trial court was on the right track in reviewing the equities of the situation, even though it reached an incorrect result.

{¶ 31} I further believe, as did the trial court, that perhaps the trustee in bankruptcy is the real party in interest in regard to this found additional asset, and even if ultimately the "found" proceeds are ordered to be distributed to the Beams, perhaps they have an obligation to report this newly discovered asset, arguably in existence at the time of the bankruptcy, to the bankruptcy court. The Beams asserted in the trial court that they have a homestead exemption of $43,250 under R.C. 2329.66 (A)(1) and "[e]ven if the Applicant's bankruptcy case was reopened, they would receive the entire net proceeds" from the sale. (Doc. #35). First, their address in the bankruptcy petition is 900 Lime Ave., Union City, Ohio, not the property address of 11675 Ohio-Indiana State Line Road. A homestead exemption only applies to property that one "uses as a residence." But also a homestead exemption would not shield the real estate from a recorded lien. In my opinion, whether or not the Beams' contention is accurate that they can apply a homestead exemption to the entirety of the proceeds is a matter for the bankruptcy court to decide or in which it may waive its interest.

{¶ 32} In the end, I am of the opinion that the Beams have not yet demonstrated they should receive a windfall for proceeds that should have gone to lienholders or the

bankruptcy trustee or to creditors. I therefore disagree with the conclusion that the trial court was attempting to bypass the Revised Code procedures regarding tax delinquency foreclosure procedure. Finally, I agree only with the holding of our case which is that the *cy pres* doctrine cannot be used to award the residual proceeds to the Darke County Foundation.

TUCKER, J., concurring:

**{¶ 33}** I agree with Judge Hall's conclusion regarding the scope of our holding. The trial court, upon remand, must determine the proper disposition of the $24,699.28 which remains after the sale of the real estate. The trial court may consider Judge Froelich's and Judge Hall's comments, but, in the first instance, this is the trial court's determination.

Copies sent to:

Margaret B. Hayes
Randall E. Breaden
Hon. Jonathan P. Hein